JOSEPH R. PALMER, Trustee, Appellant, v. BENJAMIN C. WELCH et al., Respondents.

St. Louis Court of Appeals, March 1, 1913.

1. BANKRUPTCY: Equities of Third Persons: Estoppel. Under Sec. 70a of the Bankruptcy Act, providing that the trustee is vested by operation of law with the title of the bankrupt as of the date he was adjudged a bankrupt, the trustee takes title, not as an innocent purchaser, but subject to all valid claims, liens and equities, and where the bankrupt by his conduct would have been estopped to assert a claim, such estoppel may be invoked against the trustee, in like manner as it might have been invoked against the bankrupt.

2. ESTOPPEL: In Pais: Silence: Conveyances. The presiding judge of a county court, who individually held a deed of trust

Palmer v. Welch.

on land which was also subject to a school fund mortgage given to the county, at the request of the sureties on such mortgage, attempted to sell the land, and, failing, suggested that they buy it themselves for their own protection, without mentioning his deed of trust. The sureties, relying upon their conversation with him and knowing of his close business relationship with the owner of the legal title, purchased the land without examining the records, or otherwise ascertaining the existence of the deed of trust. In an action by his trustee in bankruptcy to foreclose his deed of trust, *held* that plaintiff was estopped from asserting the bankrupt's mortgage lien to the prejudice of the grantees, and hence that a decree giving incumbrances on the land paid by them priority over the deed of trust in distributing the proceeds of the sale, although the deed of trust was duly recorded at the time they acquired the land, and although the bankrupt had no intention to defraud them, not having had the deed of trust in mind when talking with them.

3. ———: ———: ———. Estoppel may arise from silence or passive conduct on the part of one who has knowledge of the facts and whose duty it is to speak, if such silence is misleading, since, although, in order to constitute an estoppel, there must be something equivalent to a representation, silence or concealment where one ought to speak is regarded as being, in effect, a "representation."

4. ———: ———: ———. Where one, upon whom rests the duty of disclosing facts to another, fails to do so, his knowledge of their existence will be presumed, and his failure to disclose them, even though it be through negligence and even though he did not actually have them in mind at the time, will, when connected with other essential elements, raise an estoppel against him.

5. ———: ———: ———: Real Property: Recorded Title. Although one's title to real property is of record, nevertheless an estoppel will arise against him, if by representations or by silence or culpable negligence he misleads another with respect thereto, whereby the latter is induced to act to his injury.

6. ———: ———: Elements. While, in order to raise an estoppel, a representation must be made with the intention, either actually, or reasonably to be inferred by the person to whom it is made, that it should be acted upon, it is not necessary that there be an intention to deceive, for, although fraud is an essential element, either actual or constructive fraud will suffice.

7. EVIDENCE: Parol Evidence: Explaining Written Instrument: Conveyances. While parol contemporaneous evidence is inad-

missible to contradict or vary the terms of a valid written instrument, nevertheless the writing should be read in the light of surrounding circumstances, in order to more perfectly understand and explain the intent of the parties; and hence where a deed provided that the grantor was thereby released from all incumbrance on the land, which incumbrance was assumed by the grantee, it was proper to show by parol, in an action in which such assumption was sought to be enforced against the grantee, that the grantee had no knowledge of a particular incumbrance, that the grantor did not have such incumbrance in mind, and that it was not intended that the grantee should assume it.

8. **APPELLATE PRACTICE: Review: Immaterial Matters.** Where, in a suit to foreclose a deed of trust, the *cestui que trust* was adjudged to be estopped from asserting his lien to the prejudice of rights acquired by grantees of the land and the court accordingly gave incumbrances paid by them priority over the deed of trust in the distribution of the proceeds of the sale, it was unnecessary to determine whether such incumbrances were junior or senior to the deed of trust, since the grantees' priority was predicated upon the estoppel.

9. ———: ———: **Matters Affecting Respondent.** Where, in a suit to foreclose a deed of trust, the *cestui que trust* was adjudged to be estopped from asserting his lien to the prejudice of rights acquired by grantees of the land and the court accordingly gave incumbrances paid by them priority over the deed of trust in the distribution of the proceeds of the sale, the *cestui que trust* could not be heard to complain, on appeal, that the court failed to grant the relief prayed for in the grantes' cross-bill, by reforming their deed, in which they assumed incumbrances on the land, so as to exclude the assumption of the deed of trust foreclosed, inasmuch as the grantees did not appeal from the decree and equity could be done without such reformation.

10. ———: ———: **Immaterial Matters.** Where, in a suit to foreclose a deed of trust, the *cestui que trust* was adjudged to be estopped from asserting his lien to the prejudice of rights acquired by grantees of the land and the court accordingly gave incumbrances paid by them priority over the deed of trust in the distribution of the proceeds of the sale, the *cestui que trust* could not be heard to complain, on appeal, that the court did not require them to account for crops and timber removed from the land prior to their purchase of it and while they were in possession of it as tenants, for which they had settled with their lessor.

11. **JURISDICTION: Judgments: Nonresidents.** A personal judgment cannot be had against a nonresident of the State who is not personally served in the State.

12. **MORTGAGES AND DEEDS OF TRUST: Foreclosure: Judgment: Disposition of Parties.** Where, in a suit to foreclose a deed of trust, the court correctly determined that grantees of the land were not personally liable, a judgment should have been rendered for them on plaintiff's demand for a deficiency judgment, in order that that issue be definitely settled.

Appeal from Lincoln Circuit Court.—*Hon. James D. Barnett*, Judge.

AFFIRMED AND REMANDED (*with directions*).

*Chas. Martin* and *Wm. A. Dudley* for appellant.

(1) The element of fraud is not in the case. There was no intention upon the part of Judge Reid to misrepresent a fact or conceal the truth about the deed of trust in order to induce the defendants to buy the land. Freeland v. Williamson, 220 Mo. 231; Keeney v. McVoy, 206 Mo. 58; Harrison v. McReynolds, 183 Mo. 549. By the slightest diligence defendants could have ascetained that the deed of trust was upon the land, before they paid the interest on the county mortgage and levee taxes. (2) The court against the objection and exceptions duly saved by plaintiff, allowed defendants to show that this express contract did not mean what it says, viz.: That Elsberry and Goodman assumed all the incumbrance and released Welch therefrom; but that it meant all the incumbrances except the debt due Judge Reid, involved here. This was a plain, bold attempt to vary and modify an express contract by oral testimony, and was in violation of the elementary rules of evidence. The recital was not a receipt but a contract. Jackson v. Railroad, 54 Mo. App. 636; Construction Co. v. Hayes, 191 Mo. 248; Culbertson v. Young, 86 Mo. App. 277; Parson v. Kelso, 141 Mo. App. 369; Moss v. Railroad, 141 Mo. App. 217.

*R. H. Norton* and *Avery, Young & Killam* filed argument for respondent.

STATEMENT.—This is a suit by Joseph R. Palmer, trustee in bankruptcy of the estate of William W. Reid, a bankrupt, to foreclose a deed of trust upon certain lands in Lincoln county, and for judgment against the defendants for any deficiency that may remain due on the notes secured by the deed of trust, after applying to the payment thereof the proceeds of the sale of such land.

The petition alleges the adjudication of William W. Reid a bankrupt on October 2, 1908, the appointment of plaintiff as trustee in bankruptcy of said bankrupt's estate, the order of the referee in bankruptcy authorizing and directing the bringing of this suit, and avers that the defendant Benjamin C. Welch, for value received, executed to said William W. Reid three promissory notes; one for the sum of $1500, of date August 18, 1902, due one day after date, bearing six per cent interest from date; another for the sum of $1500, of date August 28, 1902, due one day after date, bearing interest at the rate of six per cent from date, upon which, on July 12, 1904, there was credited a payment of $207.96; and a third note for the sum of $500, of date November 3, 1902, due on or before May 1, 1903, bearing interest from maturity at eight per cent. It is alleged that the two notes for $1500 each were, on December 4, 1907, marked cancelled, but that this was done by mistake, and that neither of said notes had been paid

The petition further alleges that, subsequent to the execution of the three notes above mentioned, to-wit, on November 21, 1902, the said Benjamin C. Welch and Anabel Welch, his wife, executed a deed of trtust to one W. H. Baskett as trustee, wherein they conveyed a certain tract of land in Lincoln county, consisting of one hundred acres to secure the payment

of the $3500 evidenced by the three promissory notes above mentioned; which deed of trust was duly filed for record in the recorder's office of Lincoln county, Missouri, on January 11, 1903. And it is alleged that defendant Benjamin C. Welch failed and refused to pay said notes, and that they still remain a lien against the land.

It is further alleged that on the —— day of October, 1908, defendant Welch and wife conveyed the land described in said deed of trust to the defendants, Elsberry and Goodman, in consideration of one dollar and the assumption by said defendants of the incumbrances against the land; that at the time of said last mentioned conveyance the deed of trust above mentioned, securing the said notes, was a valid and existing incumbrance against the land, and that said defendants Elsberry and Goodman in accepting the deed conveying the land to them took the property subject to the incumbrances as a part of the consideration therefor and assumed and agreed to pay said notes whereby they became liable personally for the amount due thereon.

The petition prays judgment against defendants for the amount due on said notes, and that the same be adjudged and decreed a lien against the land, and that such lien be foreclosed, the land sold and the proceeds thereof applied to the payment of such judgment, and that defendants be adjudged to pay any deficiency that may be due on said judgment after applying thereto the proceeds of the sale of said land.

Defendants Elsberry and Goodman filed their separate answer, to which plaintiff replied, and the cause came on for trial before the court. Defendant Welch came not but made default. After hearing proof the court, not being sufficiently advised in the premises, continued the further hearing of the cause to the adjourned term of said court. Before the further hearing of the same, the defendants Elsberry and Good-

man, by leave of court, filed their separate amended an-swer in said cause, wherein they denied the allega-tions in plaintiff's petition except such as were there-in expressly admitted. These defendants then averred that the three notes in question were made without con-sideration therefor, admitted the execution and record-ing of the deed of trust as alleged by plaintiff, and averred that the same contained the following clause: "This conveyance is made subject to the incumbrance of a mortgage in favor of Lincoln county, Missouri, dated May 2, 1899, to secure a loan of school funds amounting to $700." The amended answer further alleged that, while the deed by which they acquired the land from defendant Welch contained a provision that the same was conveyed in consideration of one dollar and the assumption by Elsberry and Goodman of the incumbrances against said lands, nevertheless by contract and agreement with defendant Welch at the time of the purchase of said land, these defend-ants were to give in consideration therefor the sum of one dollar and were to assume the payment of only the following incumbrances thereon, namely: Levee taxes assessed against said land in favor of the Kings Lake Levee & Drainage District, amounting to $240, the back taxes and all taxes due the State, county and school fund, assessed against said land, together with the payment of the school fund mortgage above men-tioned, of date May 22, 1909, which latter bore com-pound interest at the rate of six per cent, and on which there was due about the sum of $1200 at the time these defendants acquired said land; that the defendants had no knowledge or information of the existence of the three notes here sued upon, and that defendant Welch represented to them that there were no incumbrances on the land except the said school fund mortgage and the levee taxes and other taxes above mentioned.

The amended answer further alleged that defend-ants Elsberry and Goodman were sureties on the bonds

secured by said school fund mortgage; that defendant Elsberry, prior to the purchase of the land by him and his codefendant Goodman, had a conversation with said W. W. Reid, who was at that time the presiding judge of the county court of Lincoln county, Missouri, at which time he asked Reid to take steps to have the said school fund mortgage foreclosed, or to sell the land in question, so that these defendants would be released from any obligation by reason of being sureties on said bonds; that Reid told him that he had been trying to sell the land to one Galloway, but that the latter had refused to offer sufficient therefor to pay the school mortgage and the levee and other taxes due thereon, and that Reid suggested to defendant Elsberry that the latter and defendant Goodman buy the land and that they would not then lose anything by reason of being sureties on the school mortgage; that in this conversation said Reid made no mention of the fact that he had any deed of trust or claim on the land; that, after defendants Elsberry and Goodman purchased said land, defendant Elsberry had a further conversation with Reid, in which he informed the latter that he and Goodman had purchased the land from Welch at a price sufficient only to pay the school fund mortgage and the levee and other taxes due thereon, and that in this conversation defendant Elsberry told Reid that he had been informed that Reid held the notes here sued upon, and that Reid had then informed this defendant that the indebtedness secured by said deed of trust had been fully paid and discharged and that said lien upon the land had been fully satisfied.

And by said amended answer these defendants Elsberry and Goodman say that plaintiff should not be permitted to enforce payment of said notes as against them, but that plaintiff should be estopped therefrom by reason of the said conduct of William W. Reid.

It is also averred that these defendants Elsberry and Goodman paid to the Kings Lake Levee & Drainage District the sum of $204, assessed against said lands, and paid the amount of the back taxes, interest and costs due on said land, and paid the county treasurer of Lincoln county all interest due on said school fund mortgage, amounting to about $500; said payments in all amounting to about the sum of $750.

The amended answer prays that the deed from Welch to defendants Elsberry and Goodman be reformed to conform to what is alleged to be the true contract and agreement between the parties respecting the consideration clause thereof so that the same would show that these defendants purchased the land in consideration of the sum of one dollar and the assumption by them only of the payment of the school fund mortgage, the levee and other taxes due against said land, and all interest due thereon; praying also, in substance, that if the court shall find that the notes sued on by plaintiff are a lien upon the land in question, then that these defendants, having paid said levee and other taxes and the interest on said school fund mortgage, be subrogated to the rights of the original payees of said indebtedness, and that the court adjudge that these defendants have a lien on the land for the amount so paid by them on account of said indebtedness, prior to any lien which plaintiff may be adjudged to have thereon.

The reply was a general denial of the new matter contained in this answer. After the filing of the amended answer and the reply thereto, further evidence was heard by the court, and thereupon the court made and entered its decree herein.

The evidence showed the adjudication of W. W. Reid, a bankrupt, the appointment of Palmer as a trustee of the bankrupt's estate, and the order of the referee in bankruptcy authorizing the institution of the suit. The three notes in question were placed in

evidence, as was the deed of trust of date November 21, 1902. The two notes for $1500 each were correctly described in said deed of trust; the latter purported to secure a $500 note, of date August 29, 1902, due May 1, 1913, bearing six per cent interest from maturity. The deed of trust upon its face showed that it was made subject to the incumbrance of the school fund mortgage above mentioned. Both of the notes for $1500 each were indorsed as follows: ''I assign the within note to Robert Martin for cancellation. (Signed) W. W. Reid.'' Across the face of both of these notes there appeared the following: ''Presented and cancelled in my presence this 4th day of December, 1907. J. F. Merriwether, Recorder, By K. B. M. D. C. Cancelled, Robert Martin, assignee.''

The quit-claim deed from Welch and wife to defendants Elsberry and Goodman, of date October——, 1908, was also put in evidence. This deed contained the following clause: ''The parties of the first part are by this conveyance released from all incumbrance on the above described land, such incumbrance being assumed by the parties of the second part.''

The evidence tended to show that the three notes were given for money borrowed by Welch, although it appeared that Reid was himself borrowing money at this time. The latter testified that the note for $500 was the only note of that amount that he held against Welch at the time of the execution of the deed of trust in question, and that it was this note that was intended to be secured by the deed of trust. It appears that Reid and Welch had had a great many business transactions, and Reid's memory was not clear as to how these notes happened to be given; the evidence showed that the two notes for $1500 each were secured not only by this deed of trust but by a deed of trust executed by Welch and his wife on other land in Lincoln county, the latter being known as the Allen and Sitton tracts. This latter deed of trust also secured

one note for the sum of $702, and was subject to a prior deed of trust on each of these tracts of land. This deed of trust was admitted in evidence and showed on its face that the debt secured by it had been fully paid and discharged and the property released from the lien and incumbrance thereof.

There was testimony to the effect that Reid had sent these two notes for $1500 each to be cancelled in order to release the deed of trust upon the Allen and Sitton tracts, for the reason that this land was being sold and would not bring more than enough to satisfy the prior incumbrances, but that these notes had never been paid, and that it was not intended to release the deed of trust here sued upon. And the deed of trust sued upon did not in fact appear to have been released. Reid testified that he did not think that he had any conversation with defendant Elsberry in which he told the latter that there was nothing due on the notes here in controversy.

The evidence on behalf of defendants went to show that defendants Elsberry and Goodman intended, in acquiring the land, to assume only the payment of the school fund mortgage and the levee and other taxes; that these defendants were sureties upon the school fund mortgage, and that their acquisition of the property was merely for the purpose of endeavoring to avoid liability as sureties upon this debt. That defendant Elsberry had a talk with Reid some time before the purchase of the land, telling the latter that the county court was about to bring suit to foreclose the school mortgage, and suggesting that it would be well to have Welch sell the land so as to let them out; that shortly thereafter Judge Reid said to him, "I expect I had better sell this land and let you fellows out;" that Reid endeavored to sell the land to one Galloway for $1600, but the latter would offer only $1500; that Reid then said that, since it would take about $1600 to pay the school fund mortgage with interest thereon,

and the levee and other taxes, the best thing to do was for Elsberry and Goodman to buy the land themselves. The latter did not deal with Welch, he having removed to Mississippi prior to this time.

Defendant Goodman testified that he talked with Reid two or three times before he and Elsberry bought the land; that the latter said it was best for Elsberry and Goodman to buy the land in order to protect themselves, but said nothing about having an incumbrance thereon.

Welch testified that he inserted in the deed to Elsberry and Goodman the clause providing that the latter assume and pay incumbrances, in order to relieve himself from liabilities for the school fund mortgage and the levee and other taxes; and that at the time he wrote this clause he did not have in mind that he had given the deed of trust to Reid; that Reid and he often talked over their business affairs but that these notes were never mentioned.

The evidence showed that the property in question was worth not to exceed $1500; that defendant Elsberry and Goodman had it under lease for about two years prior to purchasing it, during which time they raised small crops on part of it and cut some wood off of it. The evidence showed that defendants Elsberry and Goodman had paid the levee and drainage taxes amounting to $204, other taxes amounting to $20.68, and had paid the interest on the school fund mortgage amounting to $564.60; said payments totaling $784.28, leaving the principal only of the school fund mortgage, to-wit, $700, unpaid.

The decree entered by the lower court finds the execution of all the notes sued upon, the cancellation by mistake of the two $1500 notes pleaded, finds all the notes due and unpaid, the adjudication of W. W. Reid as a bankrupt, the appointment of plaintiff as trustee in bankruptcy, and the order of the referee directing the bringing of this suit, and then proceeds as follows:

''The court further finds that on the 21st day of November, 1902, defendant, Benjamin C. Welch, and his wife, Anabell, executed to W. H. Baskett, as trustee, a deed of trust by which they conveyed to said W. H. Baskett the lands described in the petition, which deed of trust was made in trust to secure the payment of three promissory notes hereinbefore described, then owned and held by said William W. Reid who was named as party of the third part in said deed of trust and which deed of trust was duly recorded in book 63, at page 125, in the office of the recorder of deeds of Lincoln county, Missouri, on the 5th day of January, 1903.

''The court further finds that on the 5th day of October, 1908, the said Benjamin C. Welch, and Anabell Welch, his wife, by their deed duly executed, conveyed the lands above described to the defendants, Benjamin D. Elsberry and Tully R. Goodman; that said deed, in the body thereof, after the description of said land, contained the following recital: 'Parties of the first part are by this conveyance released from all incumbrance on the above described land, such incumbrance being assumed by the party of the second part ————' and was duly recorded in the office of the recorder of deeds of said county of Lincoln, on the 20th day of October, 1908, in deed book 78, at page 189.

''The court finds that the amount now due upon the notes aforesaid held by plaintiff, as trustee, is the sum of five thousand, four hundred, eighty-six and 43-100 dollars, but the court further finds that at the time of the execution of the deed of trust hereinbefore named, there existed a school fund mortgage executed to the county of Lincoln, in the sum of seven hundred dollars, by said Benjamin C. Welch, and wife, which with the accrued interest thereon, was a prior lien and incumbrance on said land and that the defendants, Elsberry and Goodman, had signed as sureties the bond

for which said mortgage was given; that at said time, there had also accrued and become due certain taxes and assessments for levee and drainage improvements on said land, amounting to two hundred four dollars, also State and county taxes amounting to twenty and 68-100 dollars; which were a lien and charge against said land at the time the defendants, Elsberry and Goodman, secured the same, and the court finds that the real consideration of the purchase of said lands by Elsberry and Goodman from Welch was the promise and agreement by them to pay off and discharge the debt secured by said county school fund mortgage and interest and the levee taxes and State and county taxes aforesaid and that said incumbrance was all the incumbrance intended by said Welch and said Goodman and Elsberry to be assumed by them as the consideration for said conveyance; that said Elsberry and Goodman had no actual knowledge of the existence of the notes and deeds of trust hereinbefore described held by plaintiff, but that prior to the purchase by them of the lands aforesaid and while said William W. Reid was the owner of said notes and deed of trust, the defendants, Elsberry and Goodman, had a conversation with said Reid, who was then the presiding judge of the county court of Lincoln county, Missouri, and asked him to take steps to have the school fund mortgage aforesaid foreclosed so that they, said defendants, would be released from their obligation by reason of their said security on said notes or bond. That said Reid told them that he had been trying to sell the said lands but had not received an offer for a sufficient amount to pay said school fund mortgage and the levee and other taxes due thereon, and that said Reid suggested to them that they Elsberry and Goodman, buy such lands so that they would not lose anything by reason of being securities on said school fund mortgage and the taxes aforesaid, which were a lien on said

land. And that in said conversation, the said Reid made no mention of the fact that he, the said Reid, had a claim on or to said lands, or any indebtedness thereon secured by a deed of trust or otherwise; that said Elsberry and Goodman relied and acted on said suggestion, advice and conduct of said William W. Reid in the purchase of said lands as aforesaid.

"The court further finds that on the —— day of November, 1908, said defendants, Elsberry and Goodman, paid off and discharged said State and county taxes, amounting to twenty and 68-100 dollars, levee and drainage taxes, amounting to two hundred four dollars; and interest on the said school fund mortgage bond, amounting to five hundred sixty-four and 60-100 dollars, leaving the principal of said bond, seven hundred dollars, unpaid.

"It is therefore ordered, adjudged and decreed by the court that the said deed of trust be foreclosed and the land hereinbefore described be sold by the sheriff of Lincoln county, Missouri, to the highest bidder, for cash, and that out of the proceeds of said sale, he pay first the costs and expense of said sale and of this suit.

"Second: That out of the balance of the proceeds of said sale, he repay to the defendants, Elsberry and Goodman, the sum of seven hundred eighty-four and 28-100 dollars.

"Third: That the remaining proceeds be applied to the payment to plaintiff of the debt secured by the deed of trust first aforesaid in the sum of five thousand, four hundred, eighty-four and 43-100 dollars. That he make due report of his doings and acts in the premises to this court."

Judgment was entered accordingly, and after unsuccessfully moving for a new trial, and saving exception to the overruling of said motion, plaintiff has duly prosecuted his appeal to this court.

ALLEN, J. (after stating the facts).—We are not concerned with the question of the consideration for . the notes involved in this suit. The trial court found that the notes were valid as between Welch, the maker thereof, and Reid, the bankrupt, and that they had not been paid; the court ordered the deed of trust foreclosed and the land sold, subject of course to the prior incumbrance of the school fund mortgage. However, the finding of the lower court was, in effect, that the trustee in bankruptcy of Reid should be estopped from asserting any claim upon these notes as against the defendants Elsberry and Goodman, and that the latter, out of the proceeds of the sale of the land, should be reimbursed for their expenditures in paying off liens and incumbrances thereon. This seems to be in accordance with the clear equities of the case.

That the trustee in bankruptcy stands in the shoes of the bankrupt, so far as the right to enforce the collection of these notes is concerned, must be conceded. The trustee is vested "by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt." [Bankruptcy Act, sec. 70a.] He takes the title that the bankrupt had at the date of adjudication, not as an innocent purchaser, but subject to all valid claims, liens and equities. [Loveland on Bankruptcy (1912), sec. 371.] The trustee's rights in the premises rise no higher than those of the bankrupt, and if the bankrupt by reason of any conduct on his part should in equity be estopped from asserting any claim against defendants Elsberry and Goodman, such estoppel may be invoked against his trustee in bankruptcy in like manner as it might have been invoked against the bankrupt himself.

But it is earnestly insisted by counsel for the appellant that the conduct of Reid was not such as to work an estoppel, for the reason that there was no fraud intended on his part, and no false representation or fraudulent concealment of any material fact, with

intent that these defendants should act thereupon; and for the further reason that the deed of trust was of record and these defendants had constructive notice thereof.

The evidence is convincing that these defendants, in the absence of Welch, and knowing the relations that had existed between him and Reid, and for the reason also that the latter was a member of the county court, conferred with Reid in regard to protecting themselves from liability as sureties on the school fund mortgage in favor of the county; that Reid discussed the matter with them and undertook to sell the land in order to relieve them from responsibility, and failing in this, that he told these defendants, in substance, that the best thing for them to do was to buy the land for their own protection. During all of this time no mention whatever was made by Reid of these notes and the deed of trust securing the same, but on the contrary his acts and conduct in the matter were altogether inconsistent with the existence of any such lien or incumbrance on the land, and were such as may have well put these defendants off their guard, and caused them to refrain from an examination of the records or from availing themselves of other sources of information. Clearly, under the equitable doctrine of estoppel *in pais,* Reid should not now be heard to assert any claim upon these notes as against the defendants Elsberry and Goodman, or any lien upon the land to their prejudice; and his trustee in bankruptcy has no greater right than he would have had in the premises.

It is said that to constitute an estoppel *in pais* there must have been (1) a false representation or a concealment of material facts, (2) made with the knowledge of such facts, (3) to one who was ignorant of the truth of the matter, (4) with the intention that he should act upon it, and (5) that he was induced to do so. [Bigelow on Estoppel (1890), p. 570; Blodgett v. Perry, 97 Mo. 263, 10 S. W. 891; Shields v. McClain,

75 Mo. App. 636.] However an estoppel may arise
from mere silence, or passive conduct on the part of
one who has knowledge of the facts and whose duty
it is to speak, where such silence or conduct is mis-
leading. [Pickard v. Sears, 6 Ad. & E. 469; Gregg v.
Wells, 10 Ad. & E. 90; Bigelow on Estoppel (1890),
pp. 583-588; Withers v. Railroad, 226 Mo. 399, 126
S. W. 432; Guffey v. O'Reiley, 88 Mo. 418; Pelking-
ton v. Insurance Co., 55 Mo. 1. c. 178.]

It is clear that there must be something equiva-
lent to a representation; but under the authorities it
is equally clear that silence or concealment, under cir-
cumstances where one ought to speak and to reveal
the truth, is regarded as being in effect a representa-
tion. On this question Mr. Bigelow says: "A repre-
sentation may arise not only by way of concealment
of part of the truth in regard to a whole fact, as we
have seen; more than that, from total but *misleading*
silence with knowledge, or passive conduct joined with
a duty to speak, an estoppel will arise. The case must
be such that it would be fair to interpret the silence
into a declaration of the party that he has, e. g., no
interest in the subject of the transaction. Indeed, si-
lence, when resulting in an estoppel, may not improp-
erly be said to have left something like a representa-
tion on the mind; for the case is this: A negotiation
is going on, and the mind receives the facts brought
out, and receives those facts only. Hence, everything
inconsistent with them, relating to the rights of others
present as well as to those of the party with whom the
negotiation is going on is excluded. The effect may
be considered negative, but the mind sees and may act-
ually regard that negative; indeed, that, in large part,
is the meaning of calculating the advantages of the
proposal." [Bigelow on Estoppel (1890), pp. 583,
584.]

In Guffey v. O'Reiley, supra, the court said:
"Upon this evidence the point to be determined is

whether an equitable estoppel has arisen in this cause. Lord DENMAN, who had delivered the opinion in the earlier case of Pickard v. Sears, 6 Ad. & E., 469, when he came to deliver the opinion in the later one of Gregg v. Wells, 10 Ad. & E. 98, stated that the doctrine in the former case might be stated even more broadly than it was there laid down: 'A party,' said he, 'who negligently or culpably stands by and allows another to contract on the faith and understanding of a fact which he can contradict, cannot afterwards dispute that fact in an action against the person whom he has himself assisted in deceiving.' In Niven v. Belknap, 2 Johns. 588. which was a bill in equity regarding land, the court said: 'There is an implied, as well as an express assent; as where a man who has a title, and knows of it, stands by and either encourages or does not forbid the purchase, he and all claiming under him shall be bound by such purchase. [1 Fonb. 161.] It is very justly and forcibly observed by a writer on this subject (Roberts, 130), that there is a negative fraud in imposing a false apprehension on another by silence, where silence is treacherously expressive. In equity, therefore, where a man has been silent, when in conscience he ought to have spoken, he shall be debarred from speaking when conscience requires him to be silent.' Treating on this subject, Judge STORY says: 'In many cases a man may innocently be silent, for, as has often been observed, *"Aliud est tacere, aliud celare."* But in other cases a man is bound to speak out, and his very silence becomes as expressive as if he had openly consented to what is said or done, and had become a party to the transaction;' and after giving instances of a man standing by and encouraging, or not forbidding, a sale of his property, or sees another person selling his land as grantor, and signs the deed made as a witness, the learned author, after stating the invalidating effect of such conduct on the title of the party guilty thereof, concludes by saying: 'For

in cases where one of two innocent persons must suffer a loss, and *a fortiori,* in cases where one has misled the other, he who is the cause or occasion of that confidence by which the loss has been caused or occasioned ought to bear it. Indeed, cases of this sort are viewed with so much disfavor by courts of equity, that neither infancy nor coverture will constitute any excuse for the party guilty of the concealment or misrepresentation.' [1 Story, Eq. Jur. (13 Ed.), secs. 385, 387.]'' And this language is quoted approvingly in Withers v. Railroad, 226 Mo. 1. c. 339, 401, 126 S. W. 432.

There is no doubt that Reid had knowledge of the fact of the existence of these notes and the deed of trust securing them. It is wholly immaterial whether he actually had them in mind or not at the time of his conversation with these defendants prior to their purchasing the land. His knowledge of their existence will be presumed, and his failure, under the circumstances, to disclose the fact of their existence, even though it be through negligence on his part, is tantamount to an active concealment in that it will raise an estoppel. [Guffey v. O'Riley, supra; Withers v. Railroad, supra; see also, Bigelow on Estoppel (1890), pp. 612-614.]

There can be no doubt that defendants Elsberry and Goodman were ignorant of the fact of the existence of the notes and the deed of trust, prior to their purchase of the land. And it may well be inferred from the evidence that they relied upon the conversations had with Reid and the impressions gained thereby, knowing the latter's close business relationship with Welch, who held the legal title to the property and who had removed from the State, and assuming, as they evidently did, that Reid had complete knowledge of the condition of the title to the property and that it would be safe for them to act in the premises without availing themselves of other sources of information. They may well thereby have been put off their guard, and,

relying upon the knowledge thus gained and the impressions thereby received, refrained from examining the records as to the title to the property.

Although one's title to real property is of record, nevertheless an estoppel will arise against him, if by representations he has misled another with respect thereto, whereby the latter has been induced to act to his injury. [Clark v. Edgar, 84 Mo. 106; Bailey v. Smock, 61 Mo. 213; Keifer v. Roger, 19 Minn. 32; David v. Park, 103 Mass. 501.] The principle is said to be that "a clear and positive representation of the facts may be acted upon, though the person to whom it was made had ample means of knowing the fact—indeed though he had legal notice thereof, as distinguished from knowledge, as e. g., by the due registration of an instrument." [Bigelow on Estoppel (1890), p. 627.] There is, however, no distinction in principle between a case in which an actual representation has been made, and one where silence or culpable negligence of a party is, under the circumstances of the case, tantamount to an actual representation. And in such case the silent or guilty party will be likewise estopped, even though his title be a matter of record. [Olden v. Hendrick, 100 Mo. l. c. 538, 13 S. W. 821; Evans v. Forstall et al., 58 Miss. 31.] "Mere standing by in silence will not bar one from asserting a title to land, which has been spread upon the public records, so long as no act is done to mislead the other party. [Big. on Estoppel (5 Ed.), 594.] But the very statement of the rule shows that the fact that the title is of record is no justification for an act which does mislead the other party." [Olden v. Hendrick, supra.]

In order to raise the estoppel, it is said that the representation must have been made with the intention, either actually or reasonably to be inferred by the person to whom it was made, that it should be acted upon. It has been held however that there need

be no intention to deceive. [Galbraith v. Lunsford, 87 Tenn. 89, 9 S. W. 365; Raley v. Williams, 73 Mo. 310.] And while it is frequently said that fraud is an essential element of estoppel, this must be taken to mean fraud either actual or constructive. "The element of fraud is essential either in the intention of the party estopped, or in the effect of the evidence which he attemps to set up." [Bales v. Perry, 51 Mo. 1. c. 453; Hequembourg v. Edward, 155 Mo. 1. c. 522, 56 S. W. 490.] Indeed it is said that "negligence when naturally and directly tending to indicate intention will therefore have the same effect in creating the estoppel as actual intention." [Bigelow on Estoppel (1890), p. 631 and cases there cited.] In the case before us it is clear that Reid intended that the defendants Elsberry and Goodman should act upon the theory that the land in question was subject only to incumbrances and liens other than the deed of trust. It is not necessary therefore that Reid actually intended to deceive or defraud these defendants.

It is clear that the defendants Elsberry and Goodman acted upon what we may call the representations of Reid with respect to the property. The latter had endeavored to sell the property at a price sufficient to pay the incumbrance against the same, other than the deed of trust. Failing in this, in course of conversation with them he advised that they purchase the land . for their own protection. Relying upon what they believed to be the true state of facts, and induced by Reid's conversations with them, they purchased the property. So that there can be no question but that these defendants were led to act as they did by Reid's conduct in the premises.

It is unnecessary to discuss at length the other questions raised. It is insisted by appellant that by the language of the clause in question, in the deed from Welch to Elsberry and Goodman, the latter assumed all incumbrances on the land, and that this cannot be

varied or modified by parol. While parol contempo-
raneous evidence is inadmissible to contradict or vary
the terms of a valid written instrument, nevertheless
the writing "should be read in the light of surround-
ing circumstances, in order the more perfectly to un-
derstand and explain the intent and meaning of the
parties." [Laclede Const. Co. v. Tie Co., 185 Mo., 1. c.
62, 84 S. W. 76, 87.] It plainly appears from the facts
and circumstances in evidence that the parties really in-
tended for the grantees in this deed to assume merely
the school fund mortgage with interest thereon and the
levee and other taxes and interest and penalties on
the same. The defendants Elsberry and Goodman
knew of no other incumbrances and it is perfectly clear
that they thought that these were the only liens to
which the land was subject, and that this was all that
they were assuming. Welch testified that he wrote
this clause in the deed after it had been sent to him
for execution, not having in mind the deed of trust, but
for the reason that the deed would otherwise, as he
said, leave him liable for the mortgage and taxes which
the defendants Elsberry and Goodman were to pay.
Under the circumstances of the case it would mani-
festly be inequitable and unconscionable to hold that
these defendants assumed the payment of the indebted-
ness secured by the deed of trust, and it would be
clearly contrary to the actual intention of the parties.
And it is not a case where anyone has relied upon
this clause in the deed, or acted thereupon to his injury
and damage. On the contrary the action is by the
representative of one whose conduct was such as to
estop him from enforcing any claim against these de-
fendants arising upon their supposed assumption of
the indebtedness secured by this deed of trust.

The decree properly requires that the defendants
Elsberry and Goodman be reimbursed for the moneys
expended by them in paying the interest on the school
fund mortgage, and the levee and other taxes. Their

right to be subrogated to the rights of the original payees of this indebtedness is perfectly clear; and the estoppel here raised against the plaintiff altogether precludes him from asserting any lien upon the land to the prejudice of these defendants, or any right to the proceeds of the sale thereof until they have been fully reimbursed. For this reason, also, it is unnecessary to notice the point that has been raised to the effect that the deed of trust was a lien prior to the levee taxes. The plaintiff being estopped from asserting the lien of the deed of trust as against these defendants, we are in no wise concerned with this question of priority as between the deed of trust and the levee taxes.

Neither are we concerned with the failure of the lower court by its decree to reform the deed from Welch to Elsberry and Goodman. The latter are not here appealing from that decree, and in view of the estoppel against plaintiff no reformation of the deed is necessary in order that complete equity may be done between the parties to this record.

It is also urged that the defendants Elsberry and Goodman had possession of the land in question for two or three years, and received some two hundred or two hundred and fifty dollars from crops grown thereon and cord wood cut therefrom, for which they should be made to account. The evidence however discloses that this was done under a lease from Welch to them, and that they had settled with Welch therefor long prior to the transaction here in question. Plaintiff, being estopped to assert any lien upon the land as against these defendants, is in no position to raise this question.

The decree of the lower court, so far as it goes, is manifestly correct. No personal judgment can be had against defendant Welch, as he was a nonresident of the State, and personal service was not had upon him in this State. The judgment of the lower court,

however, should go farther than it does, in that judgment should be entered for the defendants Elsberry and Goodman upon plaintiff's demand for a deficiency judgment against them, in order that this issue may thereby be definitely concluded.

For the reasons given above the judgment of the circuit court should be affirmed, and the cause remanded with directions to that court to add thereto its further judgment in favor of the defendants Elsberry and Goodman upon plaintiff's demand for a personal judgment against them; and the costs of this appeal should be taxed against the appellant. It is so ordered. *Reynolds, P. J.,* and *Nortoni, J.,* concur.