Billy G. HENSON, Plaintiff-Appellant,

v.

Arthur Leon WAGNER, Evelyn L. Wagner, James R. Arend, Jane Arend and Thelma Farnsworth, Defendants-Respondents.

No. 12450.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 29, 1982.

George S. Murray, III, Kansas City, for defendants-respondents Arthur Leon Wagner and Evelyn Wagner.

David L. Smith, Cantwell, Allman & Smith, Branson, for defendants-respondents Arend.

Marvin Motley, Branson, for defendant-respondent Thelma Farnsworth.

MAUS, Presiding Judge.

The basic relief plaintiff Billy G. Henson seeks is an adjudication that his title to 160 acres of land located in Taney County is superior to the claims of defendants James R. Arend and Jane Arend, his wife, and Arthur Leon Wagner and Evelyn L. Wagner, his wife. Defendant James R. Arend claims that his title to a ½ interest therein is superior to that of the plaintiff. Plaintiff's claim to 120 acres is derived through an installment "contract for deed" dated July 16, 1973. Plaintiff's claim to 40 acres is derived through a "contract for option to buy" dated July 18, 1973. Those instruments were executed by defendants Wagner as sellers. At the time of their execution the Wagners were the record owners of the real property. The claim of James R. Arend is derived through a prior oral purchase from defendants Wagner of a ½ interest in that real property. The Wagners' deed conveying that ½ interest to Arend was recorded before their deed conveying the 120 acres to the Hensons was recorded. The resolution of these conflicting claims involves consideration of the recording statutes and the doctrine of estoppel. The evidence, as distinguished from the factual and legal conclusions to be drawn therefrom, is subject to little conflict. A summary follows.

The initial plaintiffs were Billy G. Henson and Barbara A. Henson, his wife. Barbara A. Henson died before trial. In view of the nature of the action, it has been properly continued by Billy G. Henson. Rule 52.13. Defendant Arthur Leon Wagner (hereafter Wagner) was a real estate broker with an office in Branson. Defendant James R. Arend (hereafter Arend) was the chairman of the board of a bank in

Jerry L. Redfern, Jean Paul Bradshaw II, Neale, Newman, Bradshaw & Freeman, Springfield, for plaintiff-appellant.

Branson. During a period of several years before 1972, Wagner and Arend had engaged in approximately eight to ten ventures in buying and selling real property. In some instances, title to the property involved was taken in both names. In others, it was taken only in Wagner's name. Arend recalled that in connection with a venture prior to the one in question, Wagner made one sale without his knowledge.

On July 7, 1972, title to 315 acres in Taney County was conveyed to Arthur L. Wagner and Evelyn L. Wagner, his wife. The deed was promptly recorded. On October 12, 1972, Wagners and Arends signed a "contract for deed" to sell 10 acres (not a part of the property the subject of this litigation) of the 315 acres to Petersons and Martell. Arend testified that he orally purchased a ½ interest in the 315 acres for $13,750 and his agreement to pay ½ of the balance of Wagners' purchase price of $59,-000, which was payable in ten annual installments. Arend identified his check dated October 26, 1972, in the amount of $13,-750 payable to Wagner as having been issued as payment for that oral purchase. He testified Wagner at that time, and subsequently from time to time, promised to execute a deed conveying that ½ interest to him.

The trial court accepted this testimony and found that Arend on October 26, 1972, by oral agreement, purchased a ½ interest in the 315 acres. There was no explanation offered concerning why Arend signed the contract pertaining to the 10 acres two weeks in advance of his oral purchase. Arend stated that he realized title was solely in the name of the Wagners and that Wagner was attempting to sell the 315 acres. On July 10, 1973, the Wagners executed a deed conveying 80 acres (not a part of the property the subject of this litigation) of the 315 acres to Fulkersons. Arend did not join in this deed, although he participated in the sale and received his portion of the proceeds. There is no evidence that the Wagners or the Arends were ever in possession of any part of the 315 acres. The foregoing is the status of the title to the 315-acre tract at the time the Hensons became interested in purchasing part of it.

On July 16, 1973, the Hensons, as purchasers, and the Wagners, as sellers, executed a "contract for deed" providing for Hensons' purchase of 120 acres of the 315 acres. The purchase price was $41,250, of which $8,250 was paid upon the execution of the contract. The balance was payable in annual installments of $4,804.68. Each installment was to be first applied upon interest and the balance upon principal. The contract provided for the sellers' execution of a warranty deed in accordance with the contract and the buyers' execution of a note embodying the obligation to pay the balance of the purchase price and a deed of trust securing that note. These instruments were to be attached to the contract and all of the documents were to be held in escrow by the bank of which Arend was chairman of the board. The sellers had the option of causing the deed and deed of trust to be recorded. At the trial such an executed note was introduced in evidence although the holder of the note was not clearly identified. The abstract shows that such an executed deed of trust was recorded on October 6, 1976. Payments upon the contract were to be made at the bank mentioned. Before signing the contract, the Hensons had the title to the 120 acres examined by an attorney who reported it to be vested in the Wagners. The Hensons relied upon title being so vested.

On July 18, 1973, the Hensons and Wagners signed an instrument entitled "contract for option to buy". By the terms of this instrument, the Hensons agreed to pay Wagners $1,100 per year for an option to buy within three years an adjoining 40-acre tract for $13,750. On July 16, 1974, these parties signed a "contract for deed" providing for the Hensons' purchase of the 40-acre tract for the total price of $13,750 plus $1,100 accumulated interest. The Hensons paid $3,850 upon the execution of the contract. Except for the description of the property and amounts, the terms of this contract were substantially the same as the contract pertaining to the 120 acres.

Upon the execution of the first contracts, the Hensons took possession of the property

by renting the pasture to one Fisher. The exact nature of this tenancy and use is not shown. The tenancy was terminated in July, 1974, because Fisher was grazing too many cattle. The property was thereafter rented to another party for grazing purposes.

On April 2, 1974, there was recorded a deed dated March 23, 1974, executed by the Wagners purporting to convey a ½ interest in the 315 acres (except the 80 acres sold to Fulkersons) to defendant James R. Arend.

In 1975 the Hensons began construction of a house on the 120 acres. At an undisclosed time thereafter, when Henson learned Wagner had not paid the taxes on the property, he demanded a deed. On October 6, 1976, a deed dated July 16, 1973, purporting to have been signed by the Wagners and the Arends describing the 120 acres, except for an erroneous township number, and conveying the same to the Hensons was recorded. On December 2, 1976, a deed dated July 16, 1973, purporting to have been signed by the Wagners and the Arends and conveying the 120 acres by a corrected description to the Hensons was recorded. At the time of the trial on October 16, 1980, the Hensons had paid a total of $36,985.49 principal and $18,583.24 interest upon the two tracts. They had invested $83,617.00 in the construction of a house on the 120 acres.

In August, 1977, when he made a payment upon the note secured by Wagners' original purchase money mortgage, Arend in some unexplained manner and for some unexplained reason, learned of the two deeds last mentioned. The purported signatures of the Arends on those two deeds were determined to be false. The Arends denied any prior knowledge of the interests of the Hensons. Arend then gave the Hensons notice of his claim to a ½ interest in the 160 acres. This action followed.

The trial court made detailed findings of fact. It entered no conclusions of law dealing with the issue of estoppel raised by the pleadings. Rather, the trial court's conclusions of law were: (1) When the Wagners' deed of a ½ interest to Arend was delivered and recorded the Henson contracts were not recorded; (2) the Arends had no knowledge of the Henson transactions; and (3) therefore, the claim of Arend to a ½ interest was superior to that of Henson. Title was adjudged accordingly. Since the judgment of the trial court was based upon the construction and application of the recording statutes, this court will first consider the claims of the parties upon that basis. For obvious reasons, the 120-acre tract and the 40-acre tract must be considered separately. The 120-acre tract will be considered first.

The trial court apparently adjudged the interests of Arend to be superior to those of Henson because the Arend deed was first recorded. Neither party cited a case involving even similar facts. Independent research by this court has not revealed a case precisely on point. However, despite some misleading references and dicta and the difficulty of their discovery, the rules applicable under the recording statutes have been enunciated by the decided cases.

■ The applicable statutes providing for the recordation of instruments pertaining to real property are §§ 442.380, 442.390 and 442.400. Section 442.400 is directly applicable and provides: "No such instrument in writing shall be valid, except between the parties thereto, and such as have actual notice thereof, until the same shall be deposited with the recorder for record."

There are numerous cases holding a subsequent purchaser's title to be superior when his deed is recorded before an unrecorded deed. *Anderson v. Cole,* 234 Mo. 1, 136 S.W. 395 (1911); *Strong v. Whybark,* 204 Mo. 341, 102 S.W. 968 (1907); *Morrison v. Juden,* 145 Mo. 282, 46 S.W. 994 (1898). However, while the rules may be different in other jurisdictions and under other statutes, 66 Am.Jur.2d Records and Recording Laws § 159 (1973), it is clear in this state that Arend is not entitled to prevail because he won "the race to the courthouse" with his deed.

The Missouri recording act is not based upon the priority of recording of two conflicting conveyances, but instead is

based upon notice, or the lack of it, at the time the later purchase occurs. In Missouri a purchaser must record his conveyance for the purpose of protecting himself against a later purchaser without notice, but this is not necessary for protection from prior unrecorded conveyances, void as to him under the terms of the statute. Eckhardt and Peterson, Possessory Estates, Future Interests and Conveyances in Missouri, 23 V.A.M.S. § 94 at p. 78.

That rule has been stated in another way: "It is not necessary that the second deed be recorded, under most statutes, in order to be prior to an earlier unrecorded deed, even if the first deed is recorded ahead of the second, if the second grantee was a bona fide purchaser without notice." Thompson on Real Property § 4340 at p. 5. Also see Patton on Titles § 9, p. 38; *Miller v. Merine,* 43 F. 261 (C.C.W.D.Mo.1890).

The purpose of the recording statutes was declared in an early case.

It should also be remembered that the recording act was designed to have the record of land titles to carry absolute verity upon its face, except in the two instances mentioned, namely, between the parties to the deed and all others who have actual notice of the existence of the unrecorded deed; so, in all other cases where the record is fair upon its face, persons who purchase real estate relying upon that fact acquire a good title against the world, and before that title can be defeated it must be shown that such purchaser was either a party to the unrecorded deed or that he had actual notice thereof, and the burden of proving those facts rests upon those who claim under the unrecorded instrument, as will be shown by the authorities to be presently considered; otherwise, the record of land titles would be of but little, if any, benefit to any one in purchasing real estate. *Harrison v. Moore,* 199 S.W. 188, 189–190 (Mo.1917).

This purpose has recently been reaffirmed. *Obernay v. Chamberlin,* 506 S.W.2d 446 (Mo. banc 1974).

Consistent with that purpose other cases have emphasized the right of one dealing with real estate to rely upon the record title.

"Respondents, by the provisions of sections 3039 and 3041 of the Revised Statutes of Missouri 1929 (Mo.St.Ann. §§ 3039, 3041, pp. 1879, 1881), without evidence to the contrary, must be presumed to have been innocent purchasers, without knowledge of the $2,300 deed of trust. The respondents, we think, were without such previous notice, innocent purchasers, for a valuable consideration, in good faith, and without actual notice, and therefore acquired the property in suit, free of all liens or encumbrances, except those of which they had notice at the time." *White v. Hughes,* 88 S.W.2d 268, 271 (Mo.App.1935).

"[S]he is as much within the protection of the statute for recording deeds as one who purchased from one having a warranty deed, and she acquired the title against the prior unrecorded deed of which she had no notice." *Hickman v. Green,* 123 Mo. 165, 178, 27 S.W. 440, 444 (banc 1894).

"[A]n innocent purchaser for value takes the title discharged of secret outstanding equities not on record." *Godwin v. Gerling,* 362 Mo. 19, 31, 239 S.W.2d 352, 360 (1951).

While § 442.400 declares that no unrecorded instrument shall be valid except between the parties thereto and those having actual notice, the recording statutes have been construed to afford that protection only to subsequent mortgagees and purchasers for value. "In Missouri an unrecorded conveyance is void only as to any subsequent purchaser or mortgagee for valuable consideration and without 'actual notice.'" Eckhardt and Peterson, Possessory Estates, Future Interests and Conveyances in Missouri, 23 V.A.M.S. § 94 at p. 77.

As those statutes are so interpreted, one seeking to avoid an unrecorded instrument must not only subsequently purchase, but must pay a valuable consideration. As so used, the term "purchaser" has not been

confined to a grantee in a deed. *Petring v. Kuhs,* 350 Mo. 1197, 171 S.W.2d 635 (1943). It is not necessary to fully define that term. It is sufficient to observe it includes one who contracts for the purchase of real property.

■ In general, in determining the requirement of the payment of a valuable consideration, the rules applied are those developed in determining if a bona fide purchaser of legal title should prevail over previously existing equitable claims. 77 Am.Jur.2d Vendor and Purchaser § 613 (1975). In that connection, it has been said: "The purchase price, or a substantial part of it, must be paid, and the purchaser must have been put into position where he could not be protected or made whole." *Benson v. Watkins,* 313 Mo. 426, 435, 285 S.W. 407, 408 (1926). Also see *Doane Agr. Serv., Inc. v. Neelyville Grain Co., Inc.,* 516 S.W.2d 788 (Mo.App.1974).

The assignment of priority to the conflicting interests of Henson and Arend may be aided by considering the following hypothetical facts. First, Arend purchased and paid for the ½ interest, but did not receive or record a deed. Second, Henson purchased and paid for the 120 acres, but did not receive or record a deed. Third, Arend received and recorded a deed. Fourth, Henson received and recorded a deed. Under these facts, it is clear Arend created an unrecorded interest condemned by the cases and the statutes. Under the rules cited, it is equally clear that Henson, as the second purchaser for value, would prevail.

The basic difference between those facts and the actual facts is that Henson did not pay the entire purchase price upon the execution of the "contract for deed." "[C]ourts have experienced considerable difficulty regarding the protection which should be accorded a purchaser where a part only of the purchase price has been made before purchaser receives notice of a prior claim against the property." *Dame v. Mileski,* 80 Wyo. 156, 340 P.2d 205, 210 (1959). The decisive question is whether or not the Hensons had record or actual notice of Arend's interests before they paid sufficient consid-

eration or otherwise acquired the status of bona fide purchasers. The Hensons had record notice only if the same was imparted to them by the deed to Arend recorded on April 2, 1974. That was many months after the Hensons in contracting to purchase the 120 acres relied upon the status of the record. It has been declared:

As to the claim of A.M. to the ownership of the premises, it may be remarked, in addition to what has already been said on that point, that the deed made to H.H.M. for her benefit, having been made subsequently to the deed of trust under which the property was sold, imparted no notice to A.M., at that time occupying the position of prior mortgagee, for one in his situation is not bound to search the records to see if his mortgagor makes subsequent deeds. *Meier v. Meier,* 105 Mo. 411, 433, 16 S.W. 223, 228–229 (1891).

The effect of the recording statutes has also been summarized: "We do not think that section 3040 has reference to subsequent conveyances, but to prior conveyances which might affect subsequent purchasers and mortgagees or lien claimants." *Lustenberger v. Hutchinson,* 343 Mo. 51, 62, 119 S.W.2d 921, 927 (1938). This rule is appropriately applicable in determining that Henson did not have constructive notice by reason of the subsequent recording of the deed to Arend.

■ Henson had no actual notice of the interests of Arend until his claim was asserted by his attorney's letter on October 15, 1977. At that time the Hensons had paid a substantial portion of the purchase price and had virtually completed the construction of a home at the cost of $83,617 on the 120 acres. As a result, the Hensons had become bona fide purchasers before they received constructive or actual notice of the interests of Arend.

This is not to say that the unrecorded interests of the Hensons could not in turn have been defeated by a later purchaser for value. While Arend testified in a vague manner that in addition to the $13,750, he paid part of the installments of the original purchase price, the date and amounts of

such payments are not shown. Therefore, this court need not consider the result had Arend paid a sufficient amount to acquire the status of a bona fide purchaser after the execution of the Henson "contract for deed."

The principles referred to above that establish the superiority of the Henson title have been recognized in other states. *Oberholtz v. Oberholtz,* 79 Ohio App. 540, 74 N.E.2d 574 (1947); *Dame v. Mileski,* supra; Annot., Vendee's Rights Against Creditors or Grantees, 87 A.L.R. 1505 (1933). These principles have been restated and applied in a recent Missouri case dealing with the following facts. In 1956 a daughter and son-in-law by oral agreement "sold" a residence to her parents. The parents paid them $3,500 and assumed a $9,000 mortgage which they had paid in full by 1965. In 1964 the daughter and son-in-law executed a deed of trust in favor of a good faith mortgagee. The court held the parents were not barred by laches from seeking equitable relief because they were not aware of the second deed of trust, despite its earlier recordation, until they had actual notice thereof in May, 1967. They then promptly sought relief. However, it was held the interest of the mortgagee from the record owners was superior to the unrecorded claim of the parents. *Obernay v. Chamberlin,* supra. By reason of the recording statutes, the title of Henson to the 120-acre tract is superior to the interests of or any claim to that tract of defendants Arend.

█ However, the same is not true in regard to the 40-acre tract. The pertinent chronology is: the Wagner to Henson option is executed; the Wagner to Arend deed of a ½ interest is executed and recorded; and the Wagner and Henson contract for a deed for the 40 acres is executed. The option was a continuing offer by Wagner to sell. Thompson on Real Property § 4443. The Hensons did not by virtue thereof acquire any interest in that tract. *Martin-Welch Hardware & Plumbing Co. v. Moor,* 16 S.W.2d 667 (Mo.App.1929). The Hensons were not by the option obligated to purchase. Initially they paid nothing for the

option. This court need not speculate on the result if the option had been acknowledged and recorded and the Hensons had paid a consideration therefor or relied thereon. See *Connolly v. Des Moines & Central Iowa Railway Co.,* 246 Iowa 874, 68 N.W.2d 320 (1955). No case has been cited holding the Hensons by reason of such an option were purchasers within the meaning of the recording statute. The general subject is the topic of an annotation. Annot., Option—Intervening Rights, 50 A.L.R. 1314 (1927). Before the Hensons agreed to purchase the 40-acre tract or paid any consideration in respect thereto, the Arend deed had been recorded and the Hensons had notice thereof and took subject thereto. § 442.-390.

Henson has argued that his title to the 160-acre tract is superior to that of Arend by reason of the doctrine of estoppel. This court need not decide if that is true in regard to the 120-acre tract. 28 Am.Jur.2d Estoppel and Waiver § 109 (1966). It is not true in regard to the 40-acre tract. The elements by which title to real property may be established by estoppel are summarized in *Prouse v. Schmidt,* 156 S.W.2d 919 (Mo.1941). A corollary rule is "[m]ere standing by in silence will not bar one from asserting a title to land which has been spread upon the public records, so long as no act is done to mislead the other party." *Olden v. Hendrick,* 100 Mo. 533, 538, 13 S.W. 821, 822 (1890). Also see *Williams v. Reid,* 37 S.W.2d 537 (Mo.1931).

█ Henson argues the estoppel issue as if Arend had a deed to the ½ interest but withheld the same from the record. However, the trial court found that at the time of the oral purchase, Wagner promised to give Arend a warranty deed and repeated that promise upon Arend's subsequent requests therefor. This finding is supported by the evidence and is accepted by this court. Rule 73.01. The Wagner deed to Arend had been recorded when the Hensons signed a contract to purchase the 40-acre tract. The dereliction of Arend was his failure to require a deed upon the oral purchase or to sooner put his claim upon

record by an action and lis pendens against Wagners. By express findings and by implication the trial court determined Arend was acting in good faith and this was not a sufficient basis to estop Arend from asserting the superiority of his title. Rule 73.01. This court cannot declare this nonfeasance, if it be such, to be negligence so gross as to constitute a misrepresentation as to the future state of the record. 28 Am.Jur.2d Estoppel and Waiver § 96 (1966). Also see *Blodgett v. Perry,* 97 Mo. 263, 10 S.W. 891 (1889); *Palmer v. Welch,* 171 Mo.App. 580, 154 S.W. 433 (1926).

The defendants Arend filed an alternative cross-claim against the defendants Wagner in the event it was determined Arend did not have title to the ½ interest. Under the judgment of the trial court, the cross-claim necessarily was not considered. Upon an alternative count based upon failure of title to the 160 acres, the trial court awarded Henson a judgment for $50,000 actual and $50,000 punitive damages against defendants Wagner. The record does not reflect the amount of that judgment attributable to the 40-acre tract. It must also be noted there was evidence the Wagners assigned their interests in the contract for deed for the 120-acre tract to Thelma Farnsworth. She entered her appearance and filed an answer alleging she was the assignee of that contract and the holder of the note and deed of trust executed in connection therewith.

The judgment of the trial court is reversed and the cause is remanded with the following directions: To enter a judgment that Henson is the legal and equitable owner of the 120-acre tract as described in the contract for deed dated July 16, 1973, and that the defendants Wagner and defendants Arend have, and each of them has, no right title or interest therein or claim thereto; that defendants Wagner are the record owners of an undivided ½ interest in the 40-acre tract described in the contract for deed dated July 16, 1974, subject to the claims of Henson under said contract and that James R. Arend is the owner of the other undivided ½ interest in said 40-acre tract; that said interest in the aforesaid 160-acre tract is subject to the deed of trust recorded in book 211 at page 373 in the office of the recorder of Taney County, Missouri; to consider said cross-claim of defendants Arend and to enter judgment thereon; to reconsider said alternative count of Henson and enter judgment thereon; and to enter a judgment upon the answer of defendant Farnsworth.

HOGAN and PREWITT, JJ., concur.