*325
 
 Battle, J.
 

 The allegation of the- hill, that, at the time when the plaintiff purchased the land in question, and just before he made the purchase-, he- enqrd.red of the former owner, Thomas Ballance, in the- presence and hearing of the defendant, whether the title was good, and received an answer that it was, (the defendant not disclosing his title,) whereby the plaintiff was induced to purchase the land at a full and fair price, is rendered probable by the testimony taken in the cause; but the- proof' is not so full and satisfactory as to justify us in declaring the fact to- be established. We might, therefore, in this state of the case, either direct a further inquiry to be made by the master, or order an issue to be- tried by a jury, were wenot satisfied that enough appears upon the pleadings to entitle the plaintiff to the relief which he seeks.
 

 The defendant, in his answer, admits that, having ascertained that the deed under which his father claimed the land, conveyed only an estate for life, and that his. father owned one half only of the reversionary interest inffee, he purchased the other half from his uncle, Joshua Balhmce, to whom it belonged; that this purchase was inadb»a short time before the sale made by Garter, the trustee-; that he was present at the sale and did not disclose hjg tithe, alleging as a reason for his silence that
 
 “
 
 he knew that, before the sale, the deed from Caleb Ballance, Sen’r.., tos Thoipas Ballance, had been examined by the trustee; and th.e said trustee knew, or might have known, that said deed conveyed only a life-estate; and because said trustee, in offering said l.and. for sale, carefully and distinctly stated that it was only the estate of Thomas Ballance whatever that might be, which was offered for sale; which th.e defendant thought was a sufficient caution for all purchasers. to- enquire for themselves.” lie stated, as a further reason-i that, though he thought it probable that the plaintiff “did not know the character of the deed from Caleb Ballance, Sen’r., to Thomas Ballance, he might easily have known the same, as the said deed was duly registered in Iiyde County, on the 11th day of January, 1821, and the sale by said Carter had been advertised for several weeks before it took place.”
 
 *326
 
 The statement that Carter had examined the deed under which his grantor, Thomas Ballance, claimed, was expressly denied "by him in his deposition taken for. the defendant. On the contrary, he declared that he thought the title of his grantor was “ undoubtedly good.” The testimony of other witnesses shows clearly that inquiries were made of Thomas Bal-lance, at the sale, whether his title to the land in question was good, and he answered, unhesitatingly, that it was. There can be no doubt, then, that the trustee thought he was selling an undisputed fee simple title, in the whole tract of land, and the bidders were laboring under the same impression. Can the plaintiff, who purchased under these circumstances, have, in this Court, the relief which he seeks ?” This question we will now proceed to answer. Hr. Justice Stoby, in his “ Commentaries on Equity Jurisprudence,” vol. 1, sec. 385, says: “In many instances, a man may innocently be silent; for, as has been often observed,
 
 aliud est tacara, dlmd cala/ra.
 
 But, in other cases, a man is bound to speak out; and his very silence becomes as expressive as if he had openly consented to what is said or done, and had become a party to the transaction. Thus, if a man, having a title to an estate, which is offered for sale, and, knowing his title, stands by and encourages the sale, or does not forbid it, and thereby another person is induced to purchase the estate, under the supposition that his title is good, the former, so standing by, and being silent, will be bound by the sale; and neither he nor his privies will be at liberty to dispute the validity of the purchase.” Among the cases upon which this doctrine was established is an early
 
 one,
 
 -Raw and
 
 Pole
 
 v. Pole, decided in 1691, reported shortly after, in 2 Vern. Rep. 239. “ Leonard Bole, the defendant’s elder brother, upon his marriage with the plaintiff Elizabeth Pole, settled the lands in question upon her for her jointure. The defendant was privy to the treaty of the marriage, and engrossed the jointure-deed, and concealed the entail. Leonard Pole being dead, without issue, and having devised the land to the plaintiff Raw, the defendant, having the deed of entail in his custody, made by his grand-father,
 
 *327
 
 brought his ejectment and recovered. The plaintiffs brought their bill for relief, and the defendant, by answer, confessed he was privy to the marriage treaty, and engrossed the plaintiff Elizabeth’s jointure-deed, and that he had then the deed •of entail in his hands; hut did not mention his title, nor discover the ancient deed of entail, because he apprehended his brother would dock the entail.” The Court gave the plaintiff Elizabeth relief, and, as to her, enjoined the ejectment, but refused relief to the plaintiff Eaw, because he was a more volunteer. This case must be regarded as a strong one. It does not appear that the defendant procured, or had any agency, in bringing about the marriage between his brother and the plaintiff Elizabeth. He was only privy to it, that is, knew of it and assisted in preparing the jointure deed. His title was a remote one, depending upon the death of his brother without issue, and without having barred the estate tail; and he concealed the deed of entail, not with a view to defraud his brother’s wife, but to prevent his docking the entail. But, notwithstanding all these circumstances, the Court thought that a high moral principle of honesty and fair dealing required it to interpose for the purpose of preventing the defendant from taking advantage of the probable effect of his silence. On the section next succeeding to that which we have already cited, Mr. Justice Stoet says that, “ in order, however, to justify the application of this cogent moral principle, it is indispensable that the party so standing by and concealing his rights should be fully apprised of them, and should, by his conduct, or gross negligence, encourage or influence the purchaser; for, if he is wholly ignorant of his rights, or the purchaser knows them, or if his acts, or silence, or negligence, do not mislead, or in any manner affect the transaction, there can be no just inference of actual or constructive fraud -on his part.” Under these exceptions to the general rule, the case of
 
 Tilghman
 
 v.
 
 West,
 
 8 Ire. Eq. Rep. 183, was decided in favor of the defendant; but it is too obvious to require comment that they do not apply to the present case. The defendant knew his rights and intentionally
 
 *328
 
 concealed them, and the plaintiff was, no doubt, influenced thereby to make the purchase. The plaintiff is, therefore, clearly entitled to the aid of this Court, in making his title good. But in order to have it, he must pay to the defendant the $25 which he paid to Joshua Ballance, with interest. He may have a decree that, upon doing this, the defendant shall surrender to him the possession of the- land in dispute, and execute a deed for all the right, title and interest therein, which he acquired by his purchase from Joshua Bal-lance.
 

 Pee Cubiam. Decree accordingly.