GUFFEY v. O'REILEY, *Appellant.*

1. **Deed**: DESCRIPTION. General words of description in a deed or other instrument may be modified and restricted by particular words following them.

2. **Tax Deed, Recitals in.** Where it affirmatively appears, from the recitals in a tax deed, that no judgment was rendered against the land sold for taxes and intended to be conveyed by such deed, it is void.

3. **Tax Deed, Form of.** Where the statute requires no form of tax deed, the deed must, nevertheless, be adjusted to the facts of the case, and must contain apt and appropriate recitals in order that it may be *prima facie* evidence of such recitals. The deed must affirmatively show upon its face the amount of taxes, interest and costs due upon each tract.

4. **Equitable Estoppel**: PURCHASE OF LAND. One who has title to

land and knows of it, but stands by and allows and encourages another in ignorance of such title, to contract for the purchase of the land from a third person in possession having color of title, will be estopped from setting up his title against the party so purchasing, and whom he has himself assisted in deceiving.

5. ——— : EVIDENCE. Equitable estoppels may be given in evidence and operate as effectually as technical estoppels.

*Appeal from Sullivan Circuit Court.*—HON. G. D. BURGESS, Judge.

REVERSED.

The following is the third declaration of law, asked by defendant and refused by the court, referred to in the opinion :

"If the court, sitting as a jury, finds from the evidence that the plaintiff, prior to the purchase of the land by defendant from Hughes, had the deed for the land under which he now claims, and knew that the defendant was about to consummate his purchase of the land from Hughes, and purposely withheld or concealed from defendant the fact of his own claim of title to such land, or if plaintiff, by his acts, conduct, or conversation, induced defendant to believe that he had no claim of title to such land, and that defendant was thereby induced to make such purchase from Hughes as he did make, then the finding should be for the defendant."

*H. Lander* and *S. P. Huston* for appellant.

(1) The judgment recited in the sheriff's deed was rendered by a court of general jurisdiction, and the recitals therein were *prima facie* evidence of the existence of the judgment. R. S. 1879, sec. 2392 ; *McCormick v. Fitzmorris*, 39 Mo. 24 ; *Ellis v. Jones*, 51 Mo. 180 ; *Huxley v. Harold*, 62 Mo. 516 ; *Samuels v. Shelton*, 48 Mo. 448. In such cases jurisdiction is presumed. Jurisdiction is presumed in proceedings of courts of general

jurisdiction. Lawson on Presumptions, chap. 2, p. 27; *Huxley v. Harold*, 62 Mo. 516; *Schell v. Leland*, 45 Mo. 289; Freeman on Judg. (3 Ed.) sec. 124; *Galpin v. Page*, 18 Wall. 364; *Dingue v. Kearny*, 2 Mo. App. 515. Revised Statutes, section 6839, expressly makes the recital evidence in tax cases. (2) All acts by a court in the exercise of jurisdiction, no difference how erroneous, illegal, or even contrary to the very law by virtue of which it exists, are binding until reversed or annulled by an appellate court. This is the universal rule in ordinary cases. Freeman on Judg. (3 Ed.) sec. 135; *Latriella v. Dorleque*, 35 Mo. 233; *Perryman v. State*, 8 Mo. 208; *Bernecker v. Miller*, 44 Mo. 102; *Whitman v. Taylor*, 60 Mo. 351; *Castleman v. Relfe*, 50 Mo. 583; *Freeman v. Thompson*, 53 Mo. 183. The same rules apply to proceedings in a court of general jurisdiction in tax suits. *Wellshear v. Kelly*, 69 Mo. 343. The precise question here raised has been directly presented and passed upon by this court. *Gray v. Bowles*, 74 Mo. 419. Under a similar tax law in California, the exact question has been decided the same way. *Mayo v. Foley*, 40 Cal. 281; *Mayo v. Ah Loy*, 32 Cal. 477. (3) It was not necessary that the recital should show the amount of the judgment. *Wilhite v. Wilhite*, 53 Mo. 71. (4) The trial court erred in refusing defendant's third declaration of law presenting the question of estoppel. Bigelow on Estoppel (3 Ed.) 476; *Taylor v. Elliott*, 32 Mo. 172; *Huntsucker v. Clark*, 12 Mo. 333; *Rice v. Bunce*, 49 Mo. 231; *Pelkington v. Insurance Co.*, 55 Mo. 172.

*A. W. Mullins* for respondent.

(1) The land here in question is a part of the third tract mentioned and set forth in the judgment and deed. But, as to the third tract, and, indeed, as to all the tracts, except the first, no judgment was rendered as it affirmatively appears from the recitals in the deed. The rule of

construction is general, and is applicable alike to judg-
ments as well as to simple contracts and specialties that
·"general words of description may be modified and re-
stricted by particular words following them." And if,
therefore, the first recital should indicate that the judg-
ment was intended to be against the four several tracts
the subsequent specific recital shows that it was against
the first tract only. Freeman on Judgments, sec. 155, p.
159; *Smith v. McCullough*, 104 U. S. 25, 28; Sedgwick
on Stat. and Con. Law, 423; Jones on Chattel Mort., sec.
77; *Woodgate v. Fleet*, 44 N. Y. 1, 14; *People v. John-
son*, 38 N. Y. 63; Freeman on Ex., sec. 42. (2) The
statute in regard to delinquent back. taxes prescribes
what the judgment, if against the defendant, shall con-
tain. R. S., sec. 6838. . And it is plain that each tract
must bear its own burdens, and the judgment must
specify the amount of taxes and interest against it and
for what years. One tract cannot be sold to discharge
the liabilities against another, nor can any tract of land
under that statute be lawfully sold unless there is a judg-
ment against it conforming to the statutory requirement.
(3) The judgment recited in the sheriff's deed is void, or
no judgment at all as to the land in question. It binds
or bars no one, and all acts performed under it, and all
claims flowing out of it are void. Freeman on Judg.,
sec. 117; Freeman on Ex., sec. 20; *Higgins v. Peltzer*,
49 Mo. 152; *Fithian v. Monks*, 43 Mo. 502. (4) The evi-
dence offered by defendant did not justify the. court in
giving the declaration of law asked upon the question of
estoppel *in pais*. It is not pretended by defendant that
he was induced to make his purchase by anything that
plaintiff said or did, or that defendant altered his condi-
tion in any respect by the alleged acts of the plaintiff.
There was, therefore, no estoppel. Bigelow on Estoppel
(3 Ed.) 484; *Burke v. Adams*, 80 Mo. 504, 513, 514;
*Bales v. Perry*, 51 Mo. 449, 453; *Acton v. Dooley*, 74 Mo.
63, 67; *Spurlock v. Sproule*, 72 Mo. 503.

SHERWOOD, J.—Plaintiff brought ejectment for a tract of land, the east half of northwest quarter, section two, township sixty-four, range nineteen, and on the trial he put in evidence a chain of legal title from the United States through mesne conveyances to himself.  The claim of the defendant is based on a sale of the land for taxes, and, also, on the ground of estoppel.  Two questions are, therefore, presented for consideration by the record. 1.  Whether the trial court erred in holding that the ·sheriff's deed to Perkins, purporting to be based on a judgment for the sale of the land for back taxes, was void on its face in so far as it concerned the land in dispute.  2.  Whether the court erred in refusing to give defendant's declaration of law on the question of estoppel.

I.  As to the first point:  The sheriff's deed to· Perkins by its recitals, sets out that a judgment was rendered in favor of the state to the use of the collector "and against John Corbett, and against the real estate hereinafter described, for the sum of ——— dollars, for certain delinquent state, county and special taxes, and interest as hereinafter set forth, assessed and found by said court to be due upon the following described real estate, viz. :

| Tract No. | Parts of Section. | Sec. | Twp. | Range. |
|-----------|-------------------|------|------|--------|
| 1 | North half, southwest, southeast, | 1 | 64 | 19 |
| | West half, northeast.......... | 2 | 64 | 19 |
| | Northwest quarter............. | 2 | 64 | 19 |
| | Southwest, northeast........... | 3 | 64 | 19 |

"And that the taxes and interest found due upon said real estate, and the years for which the same were assessed, are upon each of the above described tracts, as follows, viz. :  Tract No. 1, for 1865, $0.75 ; 1866, $4 ; 1867, $12.04 ; 1868, $21.45 ; 1869, $11.42 ; 1870, $24.65 ;

1871, $25.35 ; 1872, $22.71 ; 1873, $23.16 ; 1874, $25.44 ; 1875, $20.34 ; 1876, $14.54 ; tax, $204.22 ; interest, $10.21 ; total, $214.43." And the deed further recites that "upon which judgment a special execution and order of sale was issued from the clerk's office of said court," and that under said execution the sheriff sold the said four tracts of land to C. E. Perkins, trustee, who paid therefor the aggregate sum of two hundred and ninety dollars.

The land here in question is a part of the *third* tract mentioned and set forth in said judgment and deed. But as to said third tract, and, indeed, as to all the tracts, except the first, no judgment was rendered as it affirmatively appears from the recitals in the deed. It is at first stated that judgment was rendered "against the real estate hereinafter described for the sum of ——— dollars." The recitals then specify that "the taxes and interest found due upon said real estate and the years for which the same were assessed, are upon each of the above described tracts as follows, viz." etc. Then follows the amounts and the respective years that taxes were found and adjudged to be due against said tract number one, but nothing appears against the other tracts, or either of them.

The rule is well settled that "general words of description may be modified and restricted by particular words following them." Jones on Chat. Mort., sec. 377 ; *Smith v. McCullough*, 104 U. S. 25 ; Freeman on Judg., sec. 155. Here, it will be observed, that according to the express recital and particular words in the sheriff's deed, the taxes and interest for certain years were only assessed against but one tract, to-wit: "*Tract No. 1.*" And as the tract belonging to plaintiff was not embraced within that description, it follows as the general words are controlled by the particular words that no valid judgment appears by the face of the deed to have been rendered for taxes against the tract in controversy.

But, further, should we attempt to rely on the general words in the beginning of the deed that reliance

would be vain; for the amount of the judgment against the tract in litigation is not set forth. It is true that under the statute, by virtue whereof the sale was made, no form of deed is prescribed (sec. 6839), yet the deed must contain apt and appropriate recitals in order that it may be *prima facie* evidence of such recitals. "No form being prescribed, the form must be adjusted to the facts of the case." *Einstein v. Gay*, 45 Mo. 62. And section 6838 requires that, "The judgment, if against the defendant, shall describe the land upon which taxes are found to be due, shall state the amount of taxes and interest found to be due upon each tract or lot, and the year or years for which the same are due, up to the rendition thereof, and shall decree that the lien of the state be enforced, and that the real estate, or so much thereof as may be necessary to satisfy such judgment, interests and costs, be sold, and a special *fieri facias* shall be issued thereon." This shows plainly enough what the judgment should contain, and the deed should show upon its face, and affirmatively show the amount of taxes, interest and costs, due upon each tract. Unless the deed does this, it does not properly refer to the power under which the sheriff assumed to act. So that, although no form for the deed is prescribed by the statute, yet, as it must, even in such cases, recite the power under which it is made (Blackwell on Tax Title, sec. 5, p. 406), and as the "form must be adjusted to the facts in each case," it must follow that the circuit court did not err in holding the deed void. The case of *Gray v. Bowles*, 74 Mo. 419, is totally unlike this one in its facts, and, therefore, the principle there announced has no application here.

II. In regard to the question of estoppel: Defendant next introduced evidence tending to show that he bought the land for a full price, in good faith, without any notice of any adverse claim or title, also tending to show that at the time when defendant was about to consummate the purchase of the land from Hughes, and before the money was paid or the deed delivered (the

contract being verbal), the plaintiff then held the deed from Davis to himself in his pocket unrecorded, and did not inform defendant of any claim he had to the land, but told defendant that he, plaintiff, would like to rent the land from him, defendant; that defendant did not then know that plaintiff set up any claim to the land; that plaintiff knew that the money had not been paid or the deed delivered on the evening of the twenty-sixth of April, 1882, and that defendant intended to con- summate the trade the next day, but said nothing about having the deed from Davis. Upon this evidence the point to be determined is whether an equitable estoppel has arisen in this cause. Lord Denman, who had deliv-ered the opinion in the earlier case of *Pickard v. Sears,* 6 Ad. & E. 469, when he came to deliver the opinion in the later one of *Gregg v. Wells,* 10 Ad. & E. 98, stated that the doctrine in the former case might be stated even more broadly than it was there laid down: "A party," said he, "who negligently or culpably stands by and allows another to contract on the faith and under-standing of a fact which he can contradict, cannot after-wards dispute that fact in an action against the person whom he has himself assisted in deceiving."

In *Niven v. Belknap,* 2 Johns. 588, which was a bill in equity regarding land, Thompson, J., said: "There is an implied, as well as an express assent: As where a man who has a title, and knows of it, and stands by and either encourages or does not forbid the purchase, he and all claiming under him shall be bound by such purchase. 1 Forb. 161. It is very justly and forcibly observed by a writer on this subject [Roberts, 130] that there is a negative fraud in imposing a false impression on another by silence, where silence is treacherously expressive. In equity, therefore, where a man has been silent, when in conscience he ought to have spoken, he shall be de-barred from speaking when conscience requires him to be silent."

Treating on this subject, Judge Story says: "In many cases a man may innocently be silent, for, as has often been observed, '*Aliud est tacere, aliud celare.*' But in other cases a man is bound to speak out, and his very silence becomes as expressive as if he had openly consented to what is said or done, and had become a party to the transaction," and, after giving instances of a man standing by and encouraging, or not forbidding, a sale of his property, or sees another person selling his land as grantor, and signs the deed made as a witness, the learned author, after stating the invalidating effect of such conduct on the title of the party guilty thereof, concludes by saying: "For in cases where one of two innocent persons must suffer a loss, and *a fortiori*, in cases where one has misled the other, he who is the cause or occasion of that confidence by which the loss has been caused or occasioned ought to bear it. Indeed, cases of this sort are viewed with so much disfavor by courts of equity, that neither infancy nor coverture will constitute any excuse for the party guilty of the concealment or misrepresentation." 1 Story Eq. Jur. [13 Ed.] secs. 385, 387.

The same principle is forcibly asserted in *Wendell v. Van Rensselaer*, 1 Johns. Ch. 344, where no statements were made, no active inducements held out, nor encouragement given by the defendant who was grantee in the deed under which he claimed, but the grantor remained in possession, and from time to time sold portions of the land and improvements thereon were made in full view of the defendant's residence, some of the purchasers being known to the defendant; and Chancellor Kent, when commenting on this state of facts and the acts of defendant, said: "He preserved a studied silence, and gave no notice to those purchasers, or to the world, of his title. After this, he cannot be permitted to start up with a secret deed, * * * and take the land from *bona fide* purchasers under the testator. Having, for such a length

of time, suffered the public to deal with the testator as the real owner, he cannot now be permitted to question or disturb any title which has thus been procured by his tacit assent. There is no principle better established in this court, nor one founded on more solid considerations of equity and public utility, than that which declares that if one man, knowingly, though he does it passively, by looking on, suffers another to purchase and expend money on land under an erroneous opinion of title, without making known his claim he shall not afterwards be permitted to exercise his legal right against such person. It would be an act of fraud and injustice and his conscience is bound by this equitable estoppel. *Qui tacet, consentire videtur. Qui potest et debet vetare, jubet.*"

In a later case the doctrine of the one just cited was reaffirmed, the learned chancellor remarking: "Where one having title acquiesces, knowingly and freely, in the disposition of his property for a valuable consideration, by a person pretending to title, and having color of title, he shall be bound by that disposition of the property. * * * It is deemed an act of fraud for a party, cognizant all the time of his own right, to suffer another party, ignorant of that right, to go on, under that ignorance, and purchase the property, or expend money in making improvements upon it." *Storrs v. Barker,* 6 Johns. Ch. 166.

In the case at bar, the tax deed made in October, 1878, was put on record January 1, 1879, since which time Perkins, the grantee therein, and Hughes, his grantee, under deed dated January 31, 1882, have made valuable and lasting improvements on the land which was "wild, vacant, and unimproved," and Hughes was, at the time of defendant's purchase, in possession of the land with color of title. The plaintiff's deed (which is the second one in a series of mesne conveyances from Corbett, the original patentee, his patent bearing date in 1859, and recorded June 10, 1876), is dated April 20,

1882, recites a consideration of seventy-five dollars, and was not put to record till April 28, 1882, the same day on which defendant's deed of April 27, 1882, was recorded, while the deed from Davis, the immediate grantor of plaintiff, bearing date June 20, 1866, was not recorded till after the commencement of this suit.    Looking into the record then, Perkins, in consequence of his recorded deed, possession, and improvements made, had become the apparent owner of Corbett's title, and by like circumstances, Hughes had become the successor to the title thus apparently acquired.    In this situation of affairs, the conversation between plaintiff and defendant, already recited, took place.    Can it be doubted that had the plaintiff then and there taken his unrecorded deed from his pocket and exhibited it to defendant, that such act would have prevented the defendant from purchasing? Is not this an inference at once natural and irresistible? If it is, then the plaintiff is justly chargeable as one, in the language of Lord Denman, "who negligently or culpably stands by and allows another to contract on the faith of a fact which he can contradict."    If the plaintiff had been present the next day, when defendant's verbal contract with Hughes was consummated by purchase and deed, and had remained silent, there is no conflict in the authorities that this would have estopped him as against the title of the defendant then and thus acquired.    And his standing by and saying nothing, would have been regarded, in such circumstances, as holding out tacit inducements, or encouragements, to the defendant to purchase, or else as being so culpably negligent that it would amount to the same thing.

Do the circumstances of this case materially differ in principle from the one supposed?    Was it not equally obligatory on the plaintiff to speak in the real case as in the hypothetical one?    It would seem if the evidence on the part of defendant is to be taken as true, that but one answer, and that in the affirmative, can be returned to

this question. For "the estoppel may also arise, as we have intimated, from misleading silence or passive conduct joined with a duty to speak." Bigelow on Estoppel, 492. If the plaintiff had not been brought into *contact* with the defendant when about to act, he would have been under no obligation to seek defendant out and stop the intended purchase [*Ib.* 503], but having engaged in conversation with him, having by terms of clear intimation indicated Hughes, the apparent owner, to be the real owner of the property, having failed to make known his own title, it would be unconscionable and inequitable now to permit him to assert and maintain that which he had theretofore tacitly and delusively denied. This doctrine of equitable estoppel lies at the foundation of morals; especially concerns conscience and equity; under its benign rule, entitled as it is, like other equitable doctrines, to a fair and liberal application, fraud is suppressed, and honesty and fair dealing promoted; conduct becomes equivalent to representations and acts to direct statements. Such estoppels may be given in evidence, and operate as effectually as technical estoppels; they cannot in the nature of things be subjected to fixed and settled rules of universal application like legal estoppels, nor hampered by the narrow confines of a technical formula. *Canal Co. v. Hathaway*, 8 Wend. 480; *Lucas v. Hart*, 5 Iowa, 415; *Preston v. Mann*, 25 Conn. 118; *Horn v. Cole*, 51 N. H. 287, and cases cited. The case last cited contains an admirable opinion by Perley, C. J., where the subject is discussed with distinguished ability, and the difference between legal and equitable estoppels pointed out with great clearness and force.

In conclusion, it only remains to say that the authorities, the equity and good conscience of this cause require that it be held that there was sufficient evidence to warrant the giving of the third declaration of law asked by defendant. And there was sufficient evidence to warrant

a declaration on the subject of the plaintiff being estopped. In the discussion of this matter, I have reasoned on the theory that the evidence offered to support the third declaration of law is true, inasmuch as it stands uncontradicted. When this cause goes back the defendant, if so advised, may have his cause tried as one purely equitable, and thus have the principles of equity adapted to his defence more readily and with greater facility than where applied through the rigid media of declarations of law.

For the reasons given, the judgment should be reversed and the cause remanded.    All concur.