---

BOECKELER LUMBER COMPANY, Appellant, v. WILLIAM WAHLBRINK et al., Respondents.

St. Louis Court of Appeals. Argued and Submitted April 7, 1915. Opinion Filed May 4, 1915.

1. PRINCIPAL AND AGENT: Existence of Agency: Conflicting Instructions. Where the question of whether an agency was created was a material issue, the giving of conflicting instructions, one of which declared that the agency existed, as a matter

of law, and the other of which submitted that question to the jury for determination, was reversible error.

2   INSTRUCTIONS: Conflicting Instructions.  The giving of conflicting instructions on a material issue is reversible error.

3.  MECHANICS' LIENS:  Estoppel: Principal and Agent: Husband and Wife: Agency of Husband. A husband entered into a contract for the erection of a house on his wife's lot.  The husband and wife lived at premises adjoining the lot on which the house was erected, and the wife was on the lot many times while the house was being erected, and knew that it was intended for their home.  The husband borrowed money to erect the house, to secure which the wife and husband pledged a deed of trust on the property, executed by them; the wife knowing that the proceeds of the loan were to be used in completing the house.  The·wife did not authorize the husband to build the house, and told him that she objected to his doing so, but did not make her objection known to anyone else.  In an action to enforce a mechanic's lien against the house and lot, for material used in constructing the house, and not paid for, *held* that the wife was estopped, as a matter of law, from denying the agency of her husband, and hence her property was subject to the mechanic's lien.

4.  ———: Estoppel: Estoppel of Lienors by Silence.  In an action to enforce a mechanic's lien for material used in the construction of a building, it appeared that an officer of plaintiff corporation, when asked by the owner whether the contractor owed it any money for material furnished for the building, answered that the contractor owed it some money, he thought, but that he did not know whether or not it was on the building in question, and that he would look the matter up and let the owner know.  The owner then told plaintiff's officer that he was going to settle with the contractor "by a certain date," and would deduct whatever was owing plaintiff, if anything, for material that had not been paid for.  About ten days thereafter, not having heard from plaintiff, he settled with the contractor; but whether or not that was within or after the. date specified in the conversation with plaintiff's officer was not shown.  *Held*, that the court should have instructed that, as a matter of law, plaintiff was not estopped from maintaining the action, on the theory that it was silent when it was under duty to speak, since plaintiff was not misled to his prejudice into the belief that the contractor was not indebted to plaintiff for material furnished for the building.

*Held*, by NORTONI, J., dissenting, that whether plaintiff was estopped by silence, was a question for the jury.

Appeal from St. Louis City Circuit Court.—*Hon. Eugene McQuillin,* Judge.

REVERSED AND REMANDED (*with directions*). CERTIFIED TO SUPREME COURT.

*Schulenburg & Diehm* for appellant.

The courts all concur in this, that no man can set up another's act or conduct as the ground of estoppel, unless he has himself been misled or deceived by such act or conduct; nor can he set it up when he knew or had the same means of knowledge as to the truth of the statement as the other party. The primary ground of the doctrine is that it would be a fraud on the party to assert what his previous conduct had denied, when on the faith of that denial others have acted. If the truth be known to both parties or they have equal means of knowledge, there can be no estoppel. Bales v. Perry, 51 Mo. 449; Spurlock v. Sproule, 72 Mo. 503; Acton v. Dooley, 74 Mo. 63; Blodgett v. Perry, 97 Mo. 263; 10 Am. Stat. Rep. 307; Shields v. McClure, 75 Mo. App. 631. To make the silence of a party operate as an estoppel, the circumstances must have been such as to render it his duty to speak. It is essential that he should have had knowledge of the facts, and that the adverse party should have been ignorant of the truth, and have been misled into doing that which he would not have done but for such silence. 16 Cyc. 759; Anderson v. Baumgartner, 27 Mo. 80; Farley v. Peters, 5 Mo. App. 262; Cantley v. Morgan, 51 W. Va. 304; Gregmoore Orchard Co. v. Gilmour, 159 Mo. App. 204; Knoedler v. Glaenzer, 55 Fed. 895; Taylor v. Ely, 25 Conn. 250. In the absence of expressly proved fraud, there can be no estoppel based on the acts or conduct of the party sought to be estopped when they are as consistent with honest purposes and with absence of negligence as with their opposites. Standard Sanitary

Mfg. Co. v. Arrot, 135 Fed. 750 (affirming 131 Fed. 457); Victor Talking Mach. Co. v. American Graphophone Co., 190 Fed. 1023 (affirming 189 Fed. 359); Brant v. Coal Co., 93 U. S. Sup. 335; 1 Story Equity, 391; Hequemborg v. Edwards, 155 Mo. 514. A waiver is where one in possession of any right, whether conferred by law or by contract and of full knowledge of the material facts, does or forbears the doing of something inconsistent with the existence of the right or of his intention to rely upon it; thereupon he is said to have waived it, and is precluded from claiming by reason of it afterward. Bischop on Contracts, sec. 79; Williams v. Railroad, 153 Mo. 487. Where a person stands by and sees another about to commit or in the course of committing an act infringing upon his rights and fails to assert his title or right, he will be estopped afterward to assert it; but it must appear that it was his duty to speak and that his silence or passive conduct actually misled the other to his prejudice. 16 Cyc. 761; Price v. Halley, 138 Mo. 561; Oliver v. Beard, 72 Mo. App. 181; State v. Stead, 65 Mo. App. 487; Dameron v. Jamison, 143 Mo. 483; Ingalls v. Ferguson, 138 Mo. 358; Bright v. Miller, 95 Mo. App. 270; Mivalaz v. Genovely, 28 Ky. Law 203, 89 S. W. 109.

*Henry G. Trieseler* for respondents.

(1) The answers of defendants, Alfred A. Eicks and Cass Avenue Bank, allege every essential element of an estoppel *in pais*. The evidence abundantly established the facts alleged. The instructions properly submitted the issues to the jury. Lumber Co. v. Park Association, 64 Mo. App. 377; Brick Co. v. Sadring, 68 Mo. App. 15; Chilton v. Linsay, 38 Mo. App. 57; Konta v. St. Louis Stock Exchange, 189 Mo. 26; St. Louis Safe Deposit Co. v. Kennett Est., 101 Mo. App. 370; Jaicks

v. Merrill, 201 Mo. 91; Schenrich v. Light Co., 109 Mo.
App. 406; Riley v. Insurance Co., 117 Mo. App. 235;
Pelkington v. Insurance Co., 55 Mo. 172; Leather
Manuf'rs Nat'l Bank v. Morgan, 117 U. S. 96; Bigelow
on Estoppel, p. 570. (2) Silence constituted an ele-
ment of estoppel as much so as a direct representation
or an act of omission. Bigelow on Estoppel, pp. 583-
584; Jaicks v. Merrill, 201 Mo. 109; Riley v. Insurance
Co., 117 Mo. App. 235; Pelkington v. Insurance Co., 55
Mo. 172; Konta v. St. Louis Stock Exchange, 189 Mo.
26; St. Louis Safe Deposit Co. v. Kennett Est., 101
Mo. App. 370. (3) Appellant was under a legal ob-
ligation and duty to speak, and its failure or refusal to
do so and make its claim and demand known within
a reasonable time to defendant Alfred A. Eicks com-
pleted the chain of facts or elements constituting an
estoppel *in pais* and casts the loss on appellant. (a)
Because appellant can have no lien unless there is in
existence a contract between the owner and contractor
for the erection of the building or improvements. Wal-
demeyer v. Loebig, 183 Mo. 363; McGuinn v. Federated
Mines & M. Co., 141 S. W. 467; Louisiana & Gulf Lbr.
Co. v. Myers, 87 Mo. App. 671. (b) Appellant and
respondents (defendants), by virtue of the contract
between Alfred A. Eicks and the contractor, Wahl-
brink, stood in privity of contract which cast mutual
obligations and duties upon all respecting matters per-
taining to the building or parties connected therewith.
St. Louis to use of Supply Co. v. Construction Co., 175
Mo. App. 556; Board of Education v. Fidelity Co.,
155 Mo. App. 121; Board of Education v. Fidelity Co.,
166 Mo. App. 422; Glencoe Co. v. Von Phul, 133 Mo.
561; Glencoe Co. v. Wind, 88 Mo. App. 163. (4) A
waiver of a mechanic's lien is to be determined by
all the facts and circumstances at the time the waiver
occurred, not at the time the lien is filed or suit brought.
It is, in fact, a question of intention. Rand v. Grubbs,
26 Mo. App. 591; Gorman v. Saguer, 22 Mo. App. 137;

Ridge v. Mercantile Co., 56 Mo. App. 155. (5) Appellant had knowledge that Alfred A. Eicks was about to settle and pay the contractor, Wahlbrink; was notified to present its claim, if it had one; it failed to do so; it permitted Alfred A. Eicks to pay over the money to the contractor and acquiesced in the settlement with the contractor. These facts and the attending circumstances in evidence constitute a waiver by appellant. Rand v. Grubbs, 26 Mo. App. 591.

REYNOLDS, P. J.—This is an action to enforce a mechanic's lien upon a building and the lot upon which it stands, the action being against one Wahlbrink, the original contractor, and Mathilda J. Eicks and Alfred A. Eicks, husband and wife, as owners of the property and contractors with Wahlbrink for the erection of the house, as also against the trustee and beneficiaries in a deed of trust placed upon the property after the commencement of the work on the building. At a trial of the cause in the circuit court, there was a judgment against the contractor Wahlbrink but in favor of Mr. and Mrs. Eicks and the other defendants claiming under the deed of trust. From this judgment plaintiff prosecuted its appeal to our court. The cause was argued and submitted and our court reversed the judgment and remanded the cause for failure of the trial court to hold, as a matter of law, that Mrs. Eicks was estopped under the facts in evidence from denying the agency of her husband in contracting for the erection of the building, we holding that the matter of agency of the husband under the facts in evidence was not a question *in pais* on which the jury might find one way or the other but that on the facts the agency should have been declared by the court as a matter of law. We further held that there was evidence tending to prove an estoppel against plaintiff by reason of its silence, and that whether the defendant owners were justified in relying upon that silence

and acting upon which in making payment to the con-
tractor when the materialmen had not been paid, was
a question of fact that should be submitted to the jury.
Both parties filed motions for rehearing. That of the
respondent challenged the correctness of our holding
that the court, under the facts in evidence, should have
declared as a matter of law that the agency of the
husband was established, while counsel for appellant
claimed that we were in error in holding that there
was evidence for the consideration of the jury on the
estoppel claimed against the plaintiff, arguing that
under the facts, the court should have held, as a mat-
ter of law, that there was no estoppel. We will con-
sider both propositions.

The lien here sought to be enforced is for a balance
claimed as due for material, there being no controversy
over the amount, or that the material went into the
construction of the building, and that due steps had
been taken for its enforcement against the house and
lot. Nor was it denied that the other defendants, the
Cass Avenue Bank, its trustee and the present holder
of the notes hereafter referred to, held under a deed
of trust placed upon the property while the work of
construction of the house was in progress.

The first proposition for consideration is the fact
of agency of the husband for his wife in the erection
'of the building.

It appears that the husband contracted in writing
and in his own name with Wahlbrink on June 10, 1909,
for the erection of this building on a lot owned by his
wife, and the contractor thereupon entered upon the
work of construction. Mr. Eicks had some money on
hand at the time but not sufficient to complete the build-
ing. Apparently toward the close of August, 1909, he
had drawn practically all of his money out of the Cass
Avenue Bank, where he kept his deposit, and on Au-
gust 31, 1909, he executed his individual note to that
bank apparently for $3800, discounting this for $3686,

that amount then being placed to his credit with the
.bank. He appears to have used practically all of this
amount in the completion of the house, paying the
larger part of it to Wahlbrink direct, some of it to
parties who it seems had done work or furnished
material in the construction of the house. As collat-
eral security for this individual note Mr. and Mrs.
Eicks put up with the bank a deed of trust executed
jointly by them on this lot, securing a principal note
for $3800, payable three years after August 27, and
six semiannual interest notes. While Mrs. Eicks tes-
tified that she had not authorized her husband to build
this house on her lot, and while both of them testified
that she had objected to her husband building the
house, it appears affirmatively that Mrs. Eicks knew
that this money which had been borrowed by her hus-
band was for the purpose of completing the erection
of the house on her lot; that she was on the premises,
she and her husband living on the lot adjoining it,
many times during the course of the erection of the
building; in short, knew that the building was being
constructed on this lot for the purpose of occupancy
by her and her husband as a family residence. It does
not appear that the husband had any interest in the
lot, so as a matter of law when the building was
erected it was of the property of the wife, nothing ap-
pearing to the contrary. Nor does it appear that the
objection of Mrs. Eicks to the location of the building
was ever made to any one other than her husband.

The wife testified that she "did not bother" about
the details of the construction of the house; that she
knew after it was started that it was on her land and
that it was also to be a home for her afterwards; that
she "never bothered" about the details of the building;
knew that the building was to be for their common use
as a dwelling. She went with her husband to the bank
to sign the notes and deed of trust, knowing that they
were to be used to raise money to finish the building.

Her husband told her that that was the purpose for which he was raising the money and she made no objection to pledging her property, this house and lot, the title in her name, to the bank to raise this money; that she let her husband take the money from the bank to complete the building she saw was going up next door to their home; that she signed the deed of trust at her husband's request and was willing to do it at the time and knew that the house was to be her home, but as to any arrangement of detail in respect to the house or its building, she had nothing to do. Asked if she had ever gone down to pick out things for the house, she answered that she went down town with her husband once when he selected the mantels because he asked her to go along with him; her husband asked her if she would go, she said she would, and went with him. Asked if she knew what this house was being built for and for what purpose, she answered, "Sure, I knew. I knew we were going to live in it. I knew he was building it and knew it was to be our home. Q. He never asked you about a detail or alteration or consulted you? A. Not that I know of, no. Q. You knew that the building was being built as your residence, for you to live in as a home? A. Yes."

The trial court seems to have given conflicting instructions on this matter of agency, one apparently making it a matter of law, another as a matter of fact for the determination of the jury. This itself was reversible error.

We are referred to the decision of our court in Fischer & Co. v. Anslyn, 30 Mo. App. 316, by counsel for appellant in support of their claim that, as a matter of law, the trial court should have declared that the husband was acting in this matter as agent for his wife and with her authority, although not expressly given, that authority established by implication arising on the facts in the case. Our court there said (l. c. 320) that if the wife had been before the

trial court, where the case was on appeal from a judgment of the justice of the peace, the court, ''upon the evidence, would have been warranted in finding that she was bound by her husband's contract in building the house, for the record plainly shows that the wife contemplated building, having mortgaged her property to raise money for that express purpose, and covenanted with the mortgagee that she would keep the premises free from all mechanic's liens. Can it be said that after she had permitted her husband to go on and make the contract for these contemplated improvements, and superintend the erection thereof, and expend her money thus raised as she intended it should be expended, and have moved in and occupied the house, that the policy of the law will permit her to claim, that not only her interest in the land, but that the house also, is not subject to a mechanic's lien for materials that entered into the construction of the building? And all because she was not an express party to the contract, and no express agency was shown in the husband? We do not think that she can shield herself behind such a defense. '*Qui facit per alium, facit per se*,' is a maxim entirely applicable here.''

While on the facts before the court in that case this is *obiter*, we hold it applicable here. On the facts here in evidence and which we have summarized, it is clear, as a matter of law, that the wife is estopped from denying the agency of her husband in the erection of the house and that she thereby bound her property for the value of this material which went into the construction of the house. So we held when this case was first argued and submitted.

The remaining proposition turns on the question of estoppel, raised by defendants, respondents here, and on which proposition we granted the rehearing, we having held that, on the facts in evidence, the question of estoppel was for the jury.

The estoppel pleaded is failure of plaintiff to advise Mr. Eicks, the defendant who had contracted with Wahlbrink, that Wahlbrink owed it for material that went into the construction of the house; that the plaintiff, by its silence as to its claim, had misled defendants and thus occasioned them to pay the contractor in full for the work when otherwise they might have retained a sufficient amount of the fund to liquidate plaintiff's claim.

The evidence bearing on this is, that about the time of the completion of the building, Mr. Eicks wrote plaintiff this letter, dated September 29, 1909:

"I understand you have furnished material to Mr. Wahlbrink, contractor of my house on Alice avenue. The house is nearly completed and to avoid any possibility of mechanic's liens being filed, I would be pleased to have you inform me if your bills for material are not paid, so I can govern myself accordingly when I settle with Mr. Wahlbrink."

It may be here stated that on January 4, 1910, and within four months after the demand accrued, plaintiff had filed its lien account, first giving the owner notice, all as required by statute, and in due time thereafter began this action.

Mr. Eicks testified that he dropped the letter, of which the above is a copy, in the post office, duly addressed and stamped and had waited nearly thirty days without having received any information, one way or the other, from the plaintiff Boeckeler Lumber Company on the matter; that he then called up the Boeckeler Lumber Company, plaintiff here, hereafter referred to as the lumber company, on the telephone. He said he would not fix the exact time of that telephone call, but it was before he had paid Mr. Wahlbrink in full; ten days before that. When he called up the lumber company he asked for the manager of the office and a Mr. Meyer answered the telephone and giving his name said he was the bookkeeper. Mr. Eicks tes-

tified that he told Mr. Meyer who he (Eicks) was; that he was building a house on Alice avenue and wanted to know from him whether or not there was any money due the Bockeler Lumber Company on that job; that sometime before then he had sent it (the lumber company) a letter and asked him (Meyer) if he knew anything about it. Meyer said he believed there was such a letter there but he "didn't know exactly;" that "to wait a minute" and he would call Mr. Boeckeler to the telephone. Whereupon Mr. Boeckeler, the secretary of the lumber company, came to the telephone and Mr. Eicks told him that he had mailed a letter to them and wanted to know whether there was any money due the Boeckeler Lumber Company by Wahlbrink on account of lumber the Boeckeler Lumber Company had delievered to Wahlbrink on account of his (Eicks') house on Alice avenue. He testified that Mr. Boeckeler answered that Wahlbrink owed it (the lumber company) some money, he thought, but he didn't know if it was on the Eicks' job or not; that he would look it up and let Mr. Eicks know. That, said Mr. Eicks, was all there was of it and the end of it; that Bockeler said that he would look it up and let him (Eicks) know. Mr. Eicks further testified that he told Mr. Boeckeler in this conversation over the telephone that he was going to make his final settlement with Wahlbrink "by a certain date," but that he would keep out whatever bills were coming to the Boeckeler Lumber Company, if any, if that company had furnished Wahlbrink any material that was not paid for, and deduct it from Wahlbrink's accounts. At that time there was something over $1319.50 due Wahlbrink from Eicks on this house. Mr. Eicks further testified that he had not heard anything from the lumber company when Wahlbrink came to him at his office for the payment of this money; that he then asked Wahlbrink if everything was paid; that he further told Wahlbrink that he had notified the Boeckeler Lumber Company

and that they paid no attention and gave him no response. He thereupon asked Wahlbrink if everything had been paid and Wahlbrink said it had. Whereupon he paid Wahlbrink the balance the latter claimed to be due.

On cross-examination Mr. Eicks testified that he had waited ten days after his telephone conversation with the Boeckeler people before he had paid Wahlbrink off. Whether that was within or after the "certain time" he had told Boeckeler, does not appear. Asked if Mr. Boeckeler had not, as he (Boeckeler) testified, told him (Eicks) distinctly that Wahlbrink owed him money, Mr. Eicks testified that Mr. Boeckeler, in his conversation over the telephone, had told him that Wahlbrink owed them some money, but that he (Boeckeler) did not know whether it was on the Eicks' job or not; that he did not know, but that he would let him know. He testified that he had not been shown any receipt by Wahlbrink evidencing that he (Wahlbrink) had paid the Boeckeler Lumber Company in full, nor was he shown other evidence of that fact, such as a cancelled check; did not ask for these, he testified, because he had written the lumber company and telephoned it and it had not informed him of any claim. What he meant by writing, he said, was the letter above transcribed, and the telephone conversation was the one which we have given.

While we rest the determination of this question of estoppel on the testimony of Mr. Eicks, it is not out of place to say that Mr. Boeckeler, testifying, said that this conversation over the telephone occurred about the middle of October, 1909; that in that conversation Mr. Eicks had not referred to having written him any letter; that he (Boeckeler) knew nothing of the letter; that in the conversation with Eicks he had told him that the Wahlbrink account was not paid. In short, Mr. Boeckeler, while admitting the conversation,

gave a rather different version of it from that given by Mr. Eicks.

Resting our conclusion on the version of the conversation and of the acts as given by Mr. Eicks, we think the learned trial court should have declared, as a matter of law, that there was no estoppel by silence against the plaintiff and should not have submitted that as a question of fact to the jury.

In Palmer v. Welch, 171 Mo. App. 580, 154 S. W. 433, our court had occasion to consider the question of estoppel by silence and in a very careful opinion announces the rule as to estoppel *in pais*. There, at page 596, and following, we find this, which we here repeat as very apposite:

"It is said that to constitute an estoppel *in pais* there must have been (1) a false representation or a concealment of material facts, (2) made with the knowledge of such facts, (3) to one who was ignorant of the truth of the matter, (4) with the intention that he should act upon it, and (5) that he was induced to do so." Citing many authorities our court then said: "However an estoppel may arise from mere silence, or passive conduct on the part of one who has knowledge of the facts and whose duty it is to speak, where such silence or conduct is misleading." After quoting from Bigelow on Estoppel, Guffey v. O'Reiley, 88 Mo. 418, is cited and the summary of the rule as given by Lord Denman in Gregg v. Wells, 10 Ad. & E. 98, is quoted to the effect that "a party who negligently or culpably stands by and allows another to contract on the faith and understanding of a fact which he can contradict, cannot afterwards dispute that fact in an action against the person whom he has himself assisted in deceiving." Other authority is given (l. c. 598) as holding: "In equity, therefore, where a man has been silent, when in conscience he ought to have spoken, he shall be debarred from speaking when conscience requires him to be silent."

Applying these rules to the facts here in evidence, we do not think that those facts establish an estoppel as against the plaintiff, appellant here. There was no "silence" here, applying to that term the test as above given. The most that can be said in favor of the appellants is that the Boeckeler Lumber Company broke their promise to Mr. Eicks, that they would look up the state of their account between themselves and the contractor and let Mr. Eicks know. Most certainly this was no assurance that Wahlbrink, the contractor, was not the debtor of the lumber company. On the contrary, it was a distinct statement of the fact that Wahlbrink did owe them, whether on the account for material that went into this house, they did not at the time know. We find no word indicating when this information was to be given. Mr. Eicks, with this clear warning, chose to go ahead, without further inquiry of the lumber company, and settle with Wahlbrink. There is no misleading statement here—no suppression of fact. The Boeckeler Lumber Company had four months within which to file their lien, giving notice ten days before that to the owner, and Mr. Eicks is chargeable with notice of this. That he did not altogether rely on this promise, appears by his own testimony. He told Wahlbrink that he had notified the lumber company and that it had paid no attention to him and had given him no response. Thereupon he paid him, making no further inquiry of the lumber company. Eicks certainly was not told by the lumber company that Wahlbrink owed them nothing. That company told him just the contrary, but that it did not know whether part of that indebtedness was on this job or on others. There is no word, no intimation from Eicks to the lumber company that immediate payment was to be made to Wahlbrink. Eicks testifies he told Boeckeler he was to pay Wahlbrink "by a certain day." What day? How then can it be said that Eicks was compelled to settle with Wahlbrink without following

up the matter with the lumber company. Without making further inquiry, and we think that the duty to make further inquiry was on him, without any further advices from the lumber company, Mr. Eicks saw fit to settle in full with the contractor, on the contractor's assurance that he had paid the lumber company in full. When Mr. Eicks chose to act on the word of the contractor as he did, he cannot fall back on the lumber company. When he settled, he did so at his peril, and was not justified in acting in consequence of any misleading silence by the lumber company.

We hold that, as a matter of law, there was no estoppel by silence and the jury should have been so instructed.

So holding and having held that the fact of the agency of the husband for his wife should have been held as a matter of law, the court should have given, as requested by defendants, an instruction to the jury to find the issues for plaintiff against the defendant Wahlbrink for the debt, and establish the amount of that as a lien against the property.

The judgment of the circuit court should be reversed and the cause remanded with directions to the circuit court, the amount of the debt and interest thereon to the date of the verdict having been found by the jury, to enter up judgment for that and accruing interest thereon and costs against the defendant Wahlbrink, and to adjudge the amount so found as a lien against the interests of the remaining defendants in the property described. *Allen, J.,* concurs in a separate opinion filed. *Nortoni, J.,* concurs in separate opinion filed, in so much of the opinion as holds the husband was the agent of his wife in the transaction but dissents to the second ground for reversal, holding that the question of estoppel by silence was one of fact for the jury, and considering that the opinion on that is in conflict with the decision of the Kansas City

Court of Appeals in Chilton v. Lindsay, 38 Mo. App. 57, asks that this case be certified to the Supreme Court, which is accordingly done.

## CONCURRING OPINION.

ALLEN, J.—In concurring in the views expressed by my Brother REYNOLDS herein, I merely wish to add, on the question of "estoppel by silence," that this is not a case where a lienor has stood by in silence seeing the contractor paid in full, under circumstances where such silence would lead the owner to believe that the lienor had no claim, and this was relied upon by the owner to his prejudice. Undoubtedly an estoppel would then arise, as in any other such transaction. It would be the lienor's duty to speak, under such circumstances, and his silence would be tantamount to an assurance to the owner that he had no claim. And not having spoken, when in good conscience he should, he ought not to be heard thereafter to assert a claim against the owner. Here the plaintiff did not know that the owner was, in fact, paying the contractor in full, in the belief that the latter had paid all material bills. How can it be said, then, that an estoppel will arise against plaintiff? It seems quite clear that there was no legal duty resting upon plaintiff to speak further than it did, taking defendant's evidence therefor, and that it was guilty of nothing more than a breach of an unactionable promise to investigate the matter and notify the owner. Assuming that plaintiff neglected and failed to keep its promise, it does not follow that there was any reason to suppose that such neglect and failure would lead the owner to settle in full with the contractor without hearing from plaintiff, particularly when the owner had been informed that the contractor owed plaintiff for material for which the latter might or might not have a lien claim. And it seems equally clear that the owner, having such

information, was not entitled to rely upon the mere failure to hear further from plaintiff, as an assurance that the latter had no claim against the property.

## DISSENTING OPINION.

NORTONI, J.—I concur in the first proposition treated with in the opinion, to the effect that Mrs. Eicks is estopped by joining her husband in executing the mortgage on her lot to raise money with which to erect the house thereon. But I dissent from the second proposition, touching the matter of estoppel by silence. In my judgment, this was a question for the jury.

Eicks, or his wife, rather, owned the lot, and Wahlbrink, the contractor who erected the building thereon, purchased the materials from the plaintiff lumber company. The privity existing between these parties— that is, the lumber company, who furnished the material, and Eicks, who owned the lot—is clear, for, indeed, the proceedings to enforce a lien go upon that theory. Such privity existing between Eicks, through the contractor, with the lumber company, rendered it the duty of the lumber company to speak concerning the indebtedness of Wahlbrink to it when Eicks inquired concerning that subject-matter. Manifestly, if one holds a right to enforce a lien upon the building and lot of another as incident to an account contracted by a third party in privity with both, it is proper that such person whose property may be subjected to the lien should be informed by the creditor concerning the state of the account, on inquiry thereabout. In this view, I deem it to have been the duty of the lumber company to speak on the subject when Eicks, the owner of the house, inquired as to whether Wahlbrink, the contractor, owed such company. However, it appears the lumber company did speak, that is, to the effect that it knew Wahlbrink owed it something, but on just what account it could not state at that time, and it is said

the company promised to furnish the desired information and omitted to do so. In my judgment, these facts are competent for consideration by the jury on the question of estoppel by silence in order to ascertain whether Eicks was misled, for, though the company spoke in response to inquiry, it did not speak to the point, as it should, by furnishing the information Eicks was entitled to have.

I deem the judgment of the court to be in conflict with the just principles declared by the Kansas City Court of Appeals in the case of Chilton v. Lindsay, 38 Mo. App. 57, wherein a similar matter of estoppel was asserted, and therefore request the case be certified to the Supreme Court for final determination in accordance with the mandate of the Constitution in that behalf provided.