## COMMER *v.* POTTER.

1. ESTOPPEL—EQUITY—VENDOR AND PURCHASER.
   Where the president of a real estate company allowed a mortgage on the company's subdivision to be foreclosed, purchased the subdivision from the mortgagee without recording the deed, and resold it on contract at a sub-

stantial profit to a good faith purchaser, he is estopped
from denying liability to vendees of lots in said sub-
division from whom he concealed the facts, and who, with
his knowledge and consent, continued to pay to a former
agent of the company long after the latter had ceased
to exist.[1]

2. Vendor and Purchaser—Vendor Holds Legal Title in Trust
For Vendee.

The vendor in a land contract holds the legal title in
trust for the vendee.[2]

3. Same—Purchaser of Land From Vendor With Notice As-
sumes Contract—Specific Performance.

One who purchases the land from the vendor in a land
contract with knowledge of the vendee's rights, and there-
after accepts payments from the vendee, assumes the con-
tract and may be required to specifically perform it.[3]

4. Specific Performance — Vendor and Purchaser — Equity —
Money Decree.

Where the president of a real estate company took the
title to a subdivision in which the company had sold lots
on land contract, directing the vendees to continue paying
to an agent of the company, and, in a suit by the vendees
who were unable to obtain title after paying in full for
the lots, he could not be compelled to specifically per-
form because he had sold to a good-faith purchaser, a
money decree against him is the appropriate remedy.[4]

5. Same—Equity.

The fact that a dishonest agent of the vendor allowed
the vendees larger discounts than he was authorized to
do would not defeat their right in equity to recover the
actual cash paid by them, with interest, in the absence
of any evidence that they knew or had reason to suspect
that said agent was not fully accounting to the vendor.[5]

Appeal from Wayne; Dunham (Major L.), J., pre-
siding.   Submitted June 12, 1925.   (Docket No. 13.)
Decided October 1, 1925.

Bill by Louis Commer and others against Willis A.
Potter, Glover Watson and others for specific perform-

[1]Estoppel, 21 C. J. § 163; [2]Vendor and Purchaser, 39 Cyc. p.
1612; [3]Specific Performance, 36 Cyc. p. 761; [4]Id., 36 Cyc. p. 748;
[5]Id., 36 Cyc. p. 697.

ance of land contracts or for an accounting. From a decree dismissing the bill, plaintiffs appeal. Reversed, and decree entered for plaintiffs for an accounting.

*Howard H. Campbell* and *Joseph H. Primeau,* for plaintiffs.

*Charles E. George* (*Edmund E. Shepherd,* of counsel), for defendants Potter.

*Behr & Coolidge,* for defendant Watson.

FELLOWS, J.    On October 14, 1920, plaintiffs purchased on land contracts two lots in Doxtator Center subdivision in Dearborn township, Wayne county, of the Dearborn Real Homes Company, a Michigan corporation.    Charles H. Doxtator was secretary of the company, its sales manager and had active charge of its affairs.    Payments on the contracts were made to him.    Defendant Potter was president of the company but does not appear to have been active at that time.    Along in the fall of 1922, the officers of the company seem to have discovered that Doxtator was not dealing fairly with the company and defendant Dingman was made secretary and treasurer.    It is claimed that Doxtator had appropriated the company's money to his own use and a suit was instituted against him for an accounting.    A mortgage for $20,000 on the subdivision had been foreclosed and the company was in a bad way financially.    At this point defendant Potter seems to have taken charge of the affairs of the company.    It is said he had about $18,000 invested in the company although neither he nor defendant Dingman were sworn as witnesses in the case.    Meetings were called of stockholders and purchasers but plaintiffs deny receiving any notice of such meetings or of any knowledge on their part of the affairs of the company.    They did receive notice not to make further payments to Doxtator and in December wrote

defendant Potter asking for information as to whom payments should be made. The following day defendant Potter instructed defendant Dingman to notify contract holders to make payments to him and to urge the payments each month. Pursuant to this direction Dingman wrote plaintiffs: "Replying to your letter of the 12th inst. addressed to Dr. Willis A. Potter," and notifying them to make payments to him. Thereafter they made their payments to Dingman until the final payment was due. This they tendered and asked for their deed which was refused.

On May 10, 1923, defendant Potter obtained from the mortgagees who had bid in the premises on the foreclosure sale an option to purchase them for $22,500 on terms, if they were not redeemed from the foreclosure. After the period of redemption had expired Potter exercised his option and the premises were deeded to him. The deed was not placed on record and plaintiffs had no knowledge of it; they continued their payments as before. The day after Potter received the deed he sold the premises to defendant Watson on contract for $50,000. The record fairly discloses that the arrangement to purchase and the purchase of the property from the mortgagees was for the purpose of protecting defendant Potter and other stockholders of the defunct company and others who put money into the new enterprise. All others appear to have been eliminated and the property was later deeded to a so-called common-law trust. To complete the statement of facts it should be said that before Potter received his deed, the company had ceased tô function. The exact day does not appear but the oral testimony is that the secretary of State suspended its corporate powers for failure to pay taxes and the testimony of the attorney for Potter is that he made a trip to Lansing on this subject along in April, so that the corporation was not

functioning later than some time in the spring of 1923. After plaintiffs had tendered their final payments and a deed had been refused them they learned the situation and filed this bill, claiming defendant Watson was not a good-faith purchaser and asked for specific performance or in the alternative for a money decree. The testimony is convincing that Watson was a *bona fide* purchaser and in this court counsel for plaintiffs so concede.     Plaintiffs appeal from a decree denying them all relief.

In the briefs there is considerable discussion of the duties of corporation officers and directors and whether trust relations exist in the instant case.     We need not discuss these questions at length.     It should be noted, however, that the claim is advanced on behalf of defendant Potter that he tried to obtain money to redeem the premises but was unsuccessful; he does not testify to what efforts he made, and it is passing strange that he was unable to make arrangements to take care of a $20,000 mortgage but was able to find a customer for the land for much over twice that sum the day after he acquired title.     The effect of the manipulations of this property was to "freeze out" everyone except the stockholders and others who went into the new deal and it was no doubt so intended.

Plaintiffs had been notified to make no more payments on their contract to Doxtator.     They asked Potter to whom payments should be made.     He instructed Dingman to answer the letter and direct that payments be made to him, Dingman.     Literally the act of giving the notice was performed by Dingman but it was given by direction of Potter and was his act.     He then knew that the mortgage had been foreclosed and unless redeemed the company would lose its title.     Plaintiffs had no knowledge of this. Months after the company had gone out of existence and after Potter had received his deed, which he withheld from record, plaintiffs continued to pay to Ding-

man on Potter's instructions their monthly payments, and the money so received by Dingman was used, it is claimed, to pay the expenses of a company no longer in existence. Upon the well recognized principles of equitable estoppel, Potter is estopped from now asserting that the conditions he led plaintiffs to believe existed did not in fact exist. It is not necessary for us to hold, and we do not hold, that the acts of Potter before he acquired title would alone estop him, but after he secured and held the unrecorded deed he permitted plaintiffs month by month to make their payments, knowing, as he must have known, that they were making them in the belief that they were being paid to the representative of the holder of the legal title. Under all the facts, we think Potter is equitably estopped from making the defense he now seeks to make.

In 1 Story's Equity Jurisprudence (14th Ed.), § 514, it is said:

"In many cases a man may innocently be silent; for, as has often been observed, '*Aliud est tacere, aliud celare.*' But in other cases a man is bound to speak out; and his very silence becomes as expressive as if he had openly consented to what is said or done, and had become a party to the transaction. Thus if a man having a title to an estate which is offered for sale, and knowing his title, stands by and encourages the sale or does not forbid it, thereby another person is induced to purchase the estate under the supposition that the title is good, the former, so standing by and being silent, will be bound by the sale; and neither he nor his privies will be at liberty to dispute the validity of the purchase."

In *Wendell* v. *Van Rensselaer*, 1 Johns. Ch. (N. Y.) 344, it was said by Chancellor Kent:

"There is no principle better established in this court, nor one founded on more solid considerations of equity and public utility, than that which declares, that if one man, knowingly, though he does it passively, by looking on, suffers another to purchase and

expend money on land, under an erroneous opinion of title, without making known his claim, he shall not afterwards be permitted to exercise his legal right against such person.    It would be an act of fraud and injustice, and his conscience is bound by this equitable estoppel."

The rule is thus stated in *Trustees, etc., of Brookhaven* v. *Smith,* 118 N. Y. 634 (23 N. E. 1002) :

"The general rule deduced from all the authorities is that if one is induced to purchase land by the acts or representations of another designed to influence his conduct, and creating a reasonable belief on his part under which he acts that he is thereby acquiring a valid title to the same, the party who thus has influenced him is estopped from setting up his own title, existing at the time of the purchase, against that of the purchaser."

And in *Faxton* v. *Faxon,* 28 Mich. 159, this court said:

"There is no rule more necessary to enforce good faith than that which compels a person to abstain from enforcing claims which he has induced others to suppose he would not rely on.    The rule does not rest upon the assumption that he has obtained any personal gain or advantage, but on the fact that he had induced others to act in such a manner that they will be seriously prejudiced if he is allowed to fail in carrying out what he has encouraged them to expect."

See, also, *Beaupland* v. *McKeen,* 28 Pa. St. 124 (70 Am. Dec. 115) ; *Saunderson* v. *Ballance,* 55 N. C. 322 (67 Am. Dec. 218) ; *Guffey* v. *O'Reiley,* 88 Mo. 418 (57 Am. Rep. 424) ; *Dickerson* v. *Colgrove,* 100 U. S. 578.

The vendor in a land contract holds the legal title, but he holds it in trust for the vendee.    One who purchases the land from the vendor with knowledge of the vendee's rights and thereafter accepts payments from the vendee, assumes the contract and may

be required to specifically perform it. *Lovejoy* v. *Potter*, 60 Mich. 95. Under the facts we have stated and the rules we have called attention to, defendant Potter did not by the circuitous route pursued by him acquire any better title as against these plaintiffs in a court of equity than he would have acquired had he purchased directly from the vendor. If he were now the owner, they would be entitled to a decree for specific performance, and if Watson had purchased with knowledge of the facts, decree for specific performance could be had against him. In other words, plaintiffs have made a case for specific performance but the acts of defendant Potter make such relief inappropriate. Under these circumstances, it is not claimed that a money decree can not be pronounced. *Marussa* v. *Temerowski*, 204 Mich. 271.

But it is said plaintiffs accepted discounts on advance payments made by them and do not come into equity with clean hands. There is no hint in the testimony that they knew or had any reason to suspect that Doxtator was not fully accounting to the company. He was selected by the company, not by the plaintiffs. The discount of land contracts for cash is such a common practice as to cause little ground for suspicion. Plaintiffs, of course, should only recover the actual cash paid by them, with interest, but the fact that the company selected a dishonest agent who allowed larger discounts than he was authorized to do does not defeat plaintiffs' right to be heard in a court of equity.

A decree will be entered in conformity with this opinion. Plaintiffs will recover costs of both courts against defendant Potter. Defendant Watson will recover costs of the circuit.

MCDONALD, C. J., and BIRD, SHARPE, MOORE, STEERE, and WIEST, JJ., concurred. CLARK, J., did not sit.